[No. 13171.  *En Banc.*  June 20, 1916.]

## J. H. LATSHAW et al., *Appellants*, v. WESTERN TOWNSITE COMPANY et al., *Respondents*.[1]

CORPORATIONS—POWERS—TRUSTS. The fact that a land company in the transaction of its authorized business necessarily sustains fiduciary relations to a limited extent toward those dealing with it does not render it amenable to the statutes governing corporations organized to carry on a distinctively "trust" business.

CORPORATIONS—FOREIGN CORPORATIONS—POWER TO DEAL IN REAL ESTATE. Under Rem. & Bal. Code, § 3720, prohibiting foreign corporations "hereafter organized" from exercising the power of dealing in real estate, a foreign corporation organized before the enactment of the statute, but obtaining a certificate enabling it to transact business in the state after the date of the enactment of such section, has power to carry on such business in this state, the issuance of certificate of admission not constituting organization within the meaning of the statute.

CORPORATIONS—FOREIGN CORPORATIONS—ACTS. The acts of a foreign corporation in excess of its powers as to dealing in real estate in contravention of Rem. & Bal. Code, § 3720, can be questioned only in a proper proceeding by the state.

Cross-appeals from a judgment of the superior court for King county, Albertson, J., entered February 25, 1915, upon findings in favor of the defendants, in an action for an accounting, tried to the court. Affirmed.

*Fenley Bryan* and *Stallcup & Stallcup*, for appellants.

*Geo. W. Korte* (*F. M. Dudley*, of counsel), for respondent Milwaukee Land Company.

*Bogle, Graves, Merritt & Bogle* and *A. L. Agatin*, for respondents Beverly Land Company *et al.*

BAUSMAN, J.—Plaintiffs, having as owners platted part of their lands, entered into two contracts with the Western Townsite Company. One provided for a general conveyance to it in consideration of one dollar and of a local station to be erected by the defendant railway company, which was the

[1]Reported in 158 Pac. 248.

owner of all the other company's stock. The townsite company out of these lands was to give the railway company the station site, plat the remainder, make sales with clear title to purchasers and, after deducting expenses with due accounting, equally divide the proceeds between itself and the owners. By the second contract, which related to the previously platted part, the townsite company was to make its new platting conform nearly to the old and give previous purchasers options of new selection. Power to collect sums already due was also bestowed upon the townsite company, which, simultaneously with these contracts, received a deed.

The contracts, made assignable by language which we deem both sufficient and unqualified, were subsequently assigned together with a general transfer of all interest in these lands to the defendant Milwaukee Land Company, and, during a considerable period, many sales were made, much money was remitted, and considerable work was done. The performance was chiefly by the Land Company, but that the plaintiffs acquiesced in its succession is beyond successful dispute.

Sundry differences having arisen, plaintiffs now call the whole transaction void. They sue for an accounting as to what has accrued as well as to get back what is yet to be sold, arguing that they had lodged in the townsite and land companies a trust capacity contrary to our statutes and that the latter company was, besides, a creature unlicensed by local law.

The lower court decreed certain sums in plaintiffs' favor on the accounting but denied them restoration of the lands, title to which it fully confirmed in the defendants and their transferees. Plaintiffs prosecute an appeal with cross-appeal by the land company, against which the accounting was decreed.

In 1903 there was enacted here a statute for the incorporation of trust companies. Before that time our corporations had often accepted simple trusts, such as those for mort-

gage bondholders, but it was universally recognized that there were others—receiverships, guardianships, and administration of decedents' estates, which our statutes had not yet empowered them to discharge. These our corporations had seldom if ever attempted. On the other hand, it had not been decided and has not since been decided that such trusts as they had been exercising were beyond the general corporation statutes. The new enactment was passed simply because it was obviously necessary to authorize in this state the general fiduciary for hire. Nearly all trusts were made possible to subsequent corporations, but as to pre-existing corporations not one word was said. Indeed, there was nothing forbidden even as to future corporations except as follows: "*Hereafter* no corporation *shall be organized* for the purpose of carrying on *a trust company business* in the state of Washington except under this act, and no company *hereafter organized* under any other act *shall use the word* 'trust' as part of its name." Rem. & Bal. Code, § 3346 (P. C. 41 § 107). Nor is there reason to ascribe to the framers of this law an intention to interfere further than their words. Merely to prevent future organizations for "trust company business" except under the new statute may well have seemed sufficient, because it was universally conceded that the general statutes could not be used for the trust powers most profitable and the less important it might not have appeared wise to forbid.

The townsite company was organized after, the land company before, this special statute of 1903, the former in 1906 under our own general statutes, the latter in 1881 under those of Iowa, but so far as this trust statute is concerned we are clear that the dates of their creation are unimportant. Neither of them was organized to do a trust business and, as appears by their titles, neither had assumed the name, which two are the sole features forbidden. The corporate articles of each (omitting as to the land company the words "State of Washington") were as follows:

"To purchase, hold, lease, sell, and convey lands in the state of Washington; and subdivide and plat the same into lots, blocks, streets, alleys and public grounds and when so platted or subdivided to improve, sell, lease, or otherwise dispose of and manage the same, and to have and exercise all the rights, privileges and powers granted by the laws of the state of Washington in such case made and provided."

Such powers obviously do not aim at a trust business. Even where a corporation claimed powers "to act as agent in the sale and purchase of real and personal property," we were clear that this was not offensive to the trust company statute. *State ex rel. University Lumber & Shingle Co. v. Nichols,* 48 Wash. 605, 94 Pac. 196.

Nor was the particular transaction the doing of a trust company business. The element of trust by the townsite company is too simple to offend. That in performance the company would be a fiduciary in part is but an incident, for in no wise did the special statute forbid such fiduciary relation as might be taken on by non-trust corporations in their own lawful adventures for gain. To forbid those is not in the letter of the statute and it would be a foolish thing to ascribe to its spirit, since nearly all joint enterprises involve at times the custody of funds or temporary use of title for another's benefit or the acting for third persons. Where should we draw the line? In the negotiations and business relations of modern affairs a fiduciary relation may come today, be dropped tomorrow, and the following day be taken on again. It may even have to continue throughout. The corporation may be forced into the relation by sheer self-protection. Like an individual a corporation, in order to protect or conduct its own investments, may have to hold and distribute the funds and property of various people. We see no doing of a trust company business in its holding titles when it has an interest itself. In fact, it is very doubtful if what this company was doing in this instance could be done at all by a company organized under the trust company act.

The relation involved here is, moreover, the exceedingly common one, joint adventure, which may be found substantially defined at 23 Cyc. 453. Adjudicated instances occur in: *Jackson v. Hooper*, 76 N. J. Eq. 185, 74 Atl. 130; *Botsford v. Van Riper*, 33 Nev. 156, 110 Pac. 705; *Braddock v. Hinchman*, 78 N. J. Eq. 270, 79 Atl. 419; *Irvine v. Campbell*, 121 Minn. 192, 141 N. W. 108, Ann. Cas. 1914 C. 689. The courts have not forbidden such relations to corporations when within their particular powers or the statutes under which they came into existence.

The land company, it is next argued, was disqualified under our statute of 1890 relating to foreign corporations. Rem. & Bal. Code, § 3720, after granting foreign corporations the right to do business here, adds:

"Provided, further, that no foreign corporation which is hereafter organized which has among its other powers the business of dealing in real estate, and buying and selling the same, and for the purpose of carrying on a real estate brokerage business, shall be permitted to transact such business of buying and selling and dealing in real estate, and carrying on a brokerage business therein in this state; but this prohibition shall not extend to any other business for the transaction of which such corporation may be organized."

In *Realty Co. v. Appolonio*, 5 Wash. 437, 32 Pac. 219, we held that this section means what it says and applies only to foreign corporations organized afterwards. If any mischiefs lie either in our way of looking at this statute or in its own language, they must be small, for the legislature in a generation since has made the statute no tighter. Now the land company, organized in Iowa in 1881, presumptively enjoys the rule of the *Appolonio* case. However, it was not admitted to do business in this state until after this statute of 1890, so appellants contend that a certificate admitting it here is the same as "organized." We are clear to the contrary. Moreover, in the *Appolonio* case this very question was involved for, though the opinion does not, the record does show that the previously organized foreign corporation came be-

fore the court as filing its articles here after the statute. It is also contended that the land company still comes under the term "hereafter organized" by a subsequent amendment of its articles. It appears that when organized in 1881 this company did not have Washington in its authorized scene of operation. This power it got by amendment in Iowa in 1907 after which it took transfer from the townsite company and filed its articles here.

These two arguments of appellants do receive countenance from our decision in *State ex rel. Osborne, Tremper & Co. v. Nichols,* 38 Wash. 309, 80 Pac. 462, in which we denied a pre-existing corporation the right to change its name so as to include the word "trust," and held that as to the trust company act this was in effect the making of a new corporation. That decision, however, and the effect of the subsequent amendment of the land company's articles and of their filing here after the trust company statute as well as after the foreign corporation act of 1890, need not be discussed, for what we have to deal with here is not a power requested but a power already exercised. In the *Osborne* case it was sought to make the public officials issue a certificate in the new name. Here we have to do with conveyances past. Now our statutes have never declared void the excess acts of a foreign corporation. The statute, which might have said so, was content to impose only a penalty (Rem. & Bal. Code, § 3723 [P. C. 405 § 365]) and, speaking through Judge Rudkin in *Horrell v. California etc. Ass'n,* 40 Wash. 531, 82 Pac. 889, we held in harmony with previous utterances that the pecuniary penalty excluded others.

If, however, the objections to the land company's status run as much to a question of power as of local qualification, such as whether it could take the business at all or take it in Washington under its then articles, the answer is that only the state can question the corporate excess. *Goon Gan v. Richardson,* 16 Wash. 373, 47 Pac. 762.

In *Milton v. Crawford*, 65 Wash. 145, 118 Pac. 32, we said where the power of a corporation to hold lands for a specific purpose was questioned: "The objection would be valid only so long as the title remained in the corporation, and even then the title could only be questioned in a proper proceeding by the state," quoting the following from *Kerfoot v. Farmers' & Merchants' Bank*, 218 U. S. 281, 286:

"In the absence of a clear expression of legislative intention to the contrary, a conveyance of real estate to a corporation for a purpose not authorized by its charter, is not void, but voidable, and the sovereign alone can object. Neither the grantor nor his heirs nor third persons can impugn it upon the ground that the grantee has exceeded its powers."

We there made it clear with abundant citation that, until the state should attack, the corporation could transfer to others and we see no reason to deny this doctrine to the land company both as a holder and as a current vendor. Whether it was acting here before the filing of its articles or took the transfer before the amendment of its articles or acting in excess of what those articles empowered, it is a matter for state action. This has been held sound both where there was lack of power in the charter (*National Bank v. Matthews*, 98 U. S. 621, 628) and where the defect arose from noncompliance with local registration, *Fritts v. Palmer*, 132 U. S. 282, 291.

To conclude, several minor arguments of appellants we deem it unnecessary to discuss, and several assigned errors of detail in the lower court's decree, such as a partial wrong disposition of the depot grounds and in respect to a tract called the wye, we are satisfied from the testimony cannot be sustained.

The cross-appeal is without merit, and the judgment is affirmed.

Morris, C. J., Holcomb, Ellis, Main, Mount, Chadwick, and Parker, JJ., concur.