ROSPIGLIOSI et al. v. NEW ORLEANS, M. & C. R. CO. et al.

(Circuit Court of Appeals, Fifth Circuit. October 31, 1916.)

No. 2936.

1. RAILROADS ⬤⟐169—MORTGAGES—BONDS—TRUSTEES.
    Bondholders secured by deed of trust are assumed to be fairly represented by the trustee, and the court can deal with them only through their trustee.
    [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 536–548; Dec. Dig. ⬤⟐169.]

2. RAILROADS ⬤⟐169—MORTGAGES—DEEDS OF TRUST—TRUSTEES.
    Trustee under deed of trust securing bonds may exercise his discretion within the scope of his powers, and in the absence of fraud his acts are binding on the bondholders.
    [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 536–548; Dec. Dig. ⬤⟐169.]

3. JUDICIAL SALES ⬤⟐39, 40—VACATION—INADEQUACY OF PRICE.
    A judicial sale of land will not be set aside for inadequacy of price, unless the inadequacy be so gross as to shock the conscience, or there be additional circumstances against its fairness, though, where there is great inadequacy of price, only slight circumstances of unfairness are necessary to raise a presumption of fraud.
    [Ed. Note.—For other cases, see Judicial Sales, Cent. Dig. §§ 77, 78; Dec. Dig. ⬤⟐39, 40.]

4. RAILROADS ⬤⟐192—MORTGAGES—FORECLOSURE—SALE.
    Where a decree foreclosing a deed of trust on the property of a railroad company securing bonds provided that the bidders should deposit a certain sum of money in cash or by certified check with the special master making the sale, or in lieu thereof a certain amount of bonds of

the company, the decree did not prevent competitive bidding, so as to avoid the sale; any bondholder or person financially able to buy property of that character being allowed to bid on making the required deposit.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 391, 634–642; Dec. Dig. ☞192.]

5. RAILROADS ☞192—MORTGAGES—FORECLOSURE—VACATION—CONSENT PROCEEDINGS.

Where, in proceedings to foreclose a mortgage on railroad property the railroad company appeared, but did not object to the proceedings, making no defense, and such course was less expensive and more expeditious, the procedure cannot be deemed collusive and fraudulent, warranting vacation of a sale of the property on the ground that the rights of the stockholders were injured.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 391, 634–642; Dec. Dig. ☞192.]

6. RAILROADS ☞192—MORTGAGES—FORECLOSURE—SALES.

Where the petition of another stockholder, attacking foreclosure sale of property of the railroad company, had been withdrawn, abandoned, or dismissed, it could not be relied upon, its allegations not having been adopted, by petitioners, who as stockholders, etc., sought to set aside the sale and order of confirmation.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 391, 634–642; Dec. Dig. ☞192.]

7. RAILROADS ☞192—MORTGAGES—FORECLOSURE—SALES—VACATION.

Where the court ordering the sale of railroad property for mortgage foreclosure reserved the unconditional right to reject all bids, the sale, having been confirmed, cannot be attacked on the ground that the price was so inadequate as to shock the conscience.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 391, 634–642; Dec. Dig. ☞192.]

8. RAILROADS ☞192—MORTGAGES—FORECLOSURE — SALES — INADEQUACY OF PRICE.

Evidence that a railroad cost about 2½ times as much as the price it brought on sale under mortgage foreclosure will not, no advance bid being shown, warrant vacation of the foreclosure sale on the ground that the price was so inadequate as to shock the conscience, particularly as the court reserved the right to reject all bids.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 391, 634–642; Dec. Dig. ☞192.]

9. RAILROADS ☞192—MORTGAGES—FORECLOSURE—INTERVENTION.

General allegations, in a bill by stockholders seeking to intervene and attack a sale of corporate property under mortgage foreclosure, that the trustee occupied a hostile position, and that the foreclosure suit was fraudulent and collusive, are insufficient, but the facts constituting the fraud must be stated.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 391, 634–642; Dec. Dig. ☞192.]

10. RAILROADS ☞192—MORTGAGES—FORECLOSURE—OBJECTIONS.

A small minority of the bondholders or stockholders of a railroad company, who refused to join with other bondholders seeking a foreclosure. cannot, the others having bought in the property, attack the foreclosure sale on the ground that the proposed plan of reorganization was inequitable, for they could either have participated in the purchase or bought in the property themselves, and the reorganization plan, relating to matters out of court, did not affect the right of foreclosure.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 391, 634–642; Dec. Dig. ☞192.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

11. CORPORATIONS ☞206(5)—STOCKHOLDERS—RIGHT TO SUE.

Stockholders of a corporation cannot intervene in a proceeding to foreclose a mortgage on corporate property, setting up defenses which were available to the corporation, where there was no averment of any demand upon or refusal by the corporation to assert such defense.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 794, 796; Dec. Dig. ☞206(5).]

12. RAILROADS ☞192—MORTGAGES—FORECLOSURE—JUDICIAL SALE.

Where foreclosure sale of the property of a railroad company was attacked on the ground of the grossly inadequate price, the amounts of securities outstanding on the property and those proposed to be issued are not relevant.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 391, 634–642; Dec. Dig. ☞192.]

Appeal from the District Court of the United States for the Southern District of Alabama; Harry T. Toulmin, Judge.

Bill by the Metropolitan Trust Company of the City of New York against the New Orleans, Mobile & Chicago Railroad Company to foreclose a mortgage, under which the property of defendant was sold, whereupon Laura McDonald Stallo Rospigliosi and others petition to intervene, attacking the sale and the decree confirming the sale. From a decree dismissing the petition, petitioners appeal. Affirmed.

The following is the opinion of Toulmin, District Judge:

In the matter of the petition of intervention of Laura McDonald Stallo Rospigliosi, Helena McDonald Stallo Murat, and James E. Harrington. Said interveners in their said petition except to the master's report and return of sale filed in this cause, and object to the confirmation of said sale, and pray that said sale be not confirmed, and that the same be vacated and held for naught, upon the following grounds, namely:

Because of fraudulent and illegal practices, and the fraudulently conceived scheme designed for the purpose of preventing competition at the sale and of destroying the rights and equities of stockholders of said New Orleans, Mobile & Chicago Railroad Company, particularly the interveners; that the price obtained for the properties of the said railroad company, as reported by the special master, was and is grossly inadequate, unfair, fraudulent, and clearly the result of collusion. The interveners aver: That the purchase price, to wit, $2,763,220, was entirely inadequate, and not more than one-eighth or one-ninth of the value of the property sold, and said sale was so conducted that a greater amount could not be realized therefrom. That the sale was unfair, irregular, collusive, and fraudulent, in that by the terms of sale competitive bidding was prevented. That said terms of sale destroyed all equity between the bondholders and all other persons, and were illegal, unfair, improper, and contrary to the justice of the court, and resulted in but one bid for the property. That said sale is a part of the collusive, fraudulent scheme to deprive the stockholders of said New Orleans, Mobile & Chicago Railroad Company of their large and valuable equity in said property.

[1, 2] It is "a rule that courts can deal with bondholders only through their trustees." It is "a rule of convenience proceeding upon the assumption that the cestuis que trust are fully and fairly represented by such trustees." Farmers' Loan & Trust Co. v. Northern Pacific R. R. Co. (C. C.) 66 Fed. 169–174; Jones Corp. § 338. "The action of the trustee within the scope of his duties is, in the absence of fraud, binding upon bondholders, and in exercising his trust he may exercise his discretion within the scope of his powers." Credit Co. v. A. C. R. Co. (C. C.) 15 Fed. 46; Toler v. E. Tenn. G. R. Co. (C. C.) 67 Fed. 168.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[3, 4] The first and second ground on which the interveners seek to set aside the sale in this case is that the price at which the property was sold was grossly inadequate, and because of fraudulent and illegal practices, and the fraudulently conceived scheme designed for the purpose of preventing competition at the sale, and of the rights and equities of stockholders, and that the price obtained for the property was grossly inadequate, unfair, fraudulent. and clearly the result of collusive design, and that said sale was so conducted that a greater amount could not be realized therefrom, and further that the sale was unfair, irregular, collusive, and fraudulent, in that by the terms of sale competitive bidding was prevented. "A judicial sale of real estate will not be set aside for inadequacy of price, unless the inadequacy be so great as to shock the conscience, or unless there be additional circumstances against its fairness. Great inadequacy of price at a judicial sale of real estate requires only slight circumstances of unfairness in the conduct of the party benefited by the sale to raise a presumption of fraud." Graffam v. Burgess, 117 U. S. 180, 192, 6 Sup. Ct. 686, 692, 29 L. Ed. 839. "The purpose of the law is that the sale shall be final; and to insure reliance upon such sales, and induce biddings, it is essential that no sale be set aside for trifling reasons, or on account of matters which ought to have been attended to by the complaining party prior thereto." Pewabic Mining Co. v. Mason, 145 U. S. 349, 12 Sup. Ct. 887, 36 L. Ed. 732; Ballentyne v. Smith, 205 U. S. 289, 27 Sup. Ct. 527, 51 L. Ed. 803.

It is charged that by the terms of sale competitive bidding was prevented, that said terms destroyed equality between the bondholders and all other persons, and that they resulted in but one bid for the property. The only fact alleged to sustain this charge is the decree itself, and the court puts no such construction on the decree. It provides, as is usual in such cases, for a certain amount of money to be deposited in cash or certified check with the special master, or, in lieu of a certain amount of cash, bonds of the railroad company. If any bondholder desired to bid, or other person, corporation, or syndicate desired to do so, and owned no bonds, but was financially able to buy a railroad of the size and character of the one in question, he could have raised the amount of money to make the necessary deposit; or if the objectors herein desired to do so, and were in fact bondholders, they had the right and opportunity to co-operate with their cobondholders in the matter. There was, in the opinion of the court, nothing in the decree to prevent their doing so. The decree did not, in the terms of sale provided therein, prevent competitive bidding or limit or restrict the bid.

[5] It is charged by the objectors that the proceedings, from the time of the filing of the original bill to the final sale of the property, were "consent proceedings." Such proceedings are not necessarily fraudulent, collusive, or void. The bondholders had the right under the provisions of the mortgage to request the trustee to file a bill for a foreclosure of the mortgage in default of payment of interest on the bonds of the New Orleans, Mobile & Chicago Railroad Company. This request was made by a majority of the bondholders. The trustee, the complainant in the cause, on the part of said bondholders, and as the representative of all the bondholders, filed a bill against said railroad company, the defendant. It was represented by counsel. No objection was made to the proceedings, and no defense as they progressed. This suit is characterized as one "by consent," it was nevertheless a legal and proper proceeding and between the proper parties—the trustee as the representative of all the bondholders and the defendant railroad company. The so-called "consent proceedings" were more expeditious and less expensive than if a decree pro confesso had been taken.

If the objectors herein were, in fact, stockholders or bondholders, they must surely have had knowledge of the proceedings taken and of their progress. If they were objectors to what was being done and the purpose of the proceeding, and considered their interest jeopardized, why did they not by intervention or otherwise make known their grievance or complaint, if any, to the trustee or to their cobondholders for redress or protection during the pendency of the proceeding? Pewabic Mining Co. v. Mason supra. There are no facts alleged to sustain the charge of a collusive and fraudulent scheme to deprive the stockholders of said railroad of their alleged large and valuable equity in said property. None of said stockholders are named, and none are here mak-

ing any such claim. If it be a fact that the interveners were or are stockholders, that fact is not affirmatively alleged in their petition of intervention. That fact, if shown to exist, is by implication only.

[6] The petition of L. S. Berg, as set forth in the sixth ground of the petition, has, in my opinion, no place in this proceeding. He is not a party to this proceeding, and the allegations made by him in his petition are not made or adopted by interveners as their allegations in their petition. Moreover, Berg's petition was not insisted on by him, but in fact it was withdrawn, or abandoned, and dismissed.

[7, 8] One of the counsel for the objectors stated in his brief that "the rule of inadequacy of price must be so gross as to shock the conscience of the court is not applicable to this cause." The court concurs with the learned counsel in this opinion, for the reason, as stated by him, that the decree of the court reserves the unconditional right to reject all bids, and for the further reason that, in the opinion of the court, the inadequacy of price has not been shown by sufficient or satisfactory legal evidence in the case to be so gross as to shock the conscience or excite the suspicion of the court.

The evidence offered to prove the value of the property to sustain the charge of inadequacy of the price for which it sold is the estimated value at which the reorganization committee proposes reorganization. There can be no reorganization until the purchasers have acquired the title and possession of the property. What they now propose or plan may be entirely changed before or when the reorganization is to be made effective. It is certainly not competent or sufficient evidence to satisfy the court that the inadequacy of price is such as to justify it in refusing to confirm the sale, on the alleged estimate of said committee. The only other evidence on the subject that I find submitted by the objectors, likewise insufficient, is the testimony of T. F. Whittlesey. He shows that he had considerable experience as a railroad man, and might properly be considered generally as an expert. He testifies that from 1905 to 1907 he was general manager of the Mobile, Jackson & Kansas City Railroad Company, now the New Orleans, Mobile & Chicago Railroad Company. He states that he has just made an examination of the line of the said New Orleans, Mobile & Chicago Railroad, and has visited and observed many improvements since he was an officer of the Mobile, Jackson & Kansas City Railroad. He gives no opinion as an expert as to the value of said Mobile, Jackson & Kansas City Railroad at the time he was the general manager, and of the present value of the New Orleans, Mobile & Chicago Railroad. He does not state that he has an opinion on the subject, but he does say it was his understanding that the cost of the Mobile, Jackson & Kansas City Railroad and the Gulf & Chicago, combined, was $8,000,000, and that, taking into consideration the improvement of the property since he left it, he is of the opinion that the price of approximately $2,750,000 for the property is wholly inadequate.

[9] There is no advance bid on the price at which the property sold by any one, and none offered or suggested. "To warrant a court in disregarding the rule which precludes the intervention of an individual bondholder in foreclosure by the mortgage trustee as representative of all bondholders, the petition for intervention must allege traversable facts which, if true, show that the trustee occupies a hostile position, or other reason why he cannot fairly represent petitioner, and general allegations that the suit is fraudulent and collusive, and that the trustee is co-operating with bondholders in a reorganization scheme, are insufficient." "The petition must disclose facts bringing it within the principles governing the right to intervene; and in determining whether such facts are disclosed, the allegations of the petition must be subjected to, and must meet, the same tests as are applied to ordinary proceedings to determine whether a cause of action or defense is stated."

General allegations that the trustee acted in bad faith and in opposition to petitioner's rights and interests, and characterizing his action and the situation resulting therefrom as "fraudulent, collusive, and the like, are insufficient, in the absence of allegations of facts themselves giving rise to an inference of such partiality, fraud, or collusion." There must be an allegation of traversable facts sufficient for the court to determine whether a cause for intervention or a defense is stated. A wholesale charge of fraud and collu-

sion does not satisfy the degree of particularity and definiteness required by the rules of pleading. Continental & Commercial Trust & Savings Bank v. Allis-Chalmers Co., et al. (D. C.) 200 Fed. 600. "A bill in a suit founded on, fraud must aver particularly the facts constituting the fraud." Rice v. Wilson (D. C.) 225 Fed. 159.

The objectors charge the Metropolitan Trust Company, trustee, committed wrongs which showed it was not a proper person to represent the objectors, upon the question under consideration, and charge said trustee with bad faith, fraud, and collusion in co-operating with bondholders in a reorganization scheme. Wholesale charges of wrongdoing, general allegations of fraud and collusion, without disclosing the facts on which they are based, are insufficient. But counsel in his brief states that, "if the facts alleged by the objectors, supported by the affidavit of Mr. Stallo, be proved, then the sale of certain stocks to the St. Louis & Francisco Railroad was a fraud upon the rights of the objectors." The converse of this proposition must also be true, to wit: If the facts alleged by the objectors, supported by the affidavit of Mr. Stallo, be not proved, then the sale of the stocks referred to was not a fraud upon the rights of the objectors. Fraud justifying relief in equity must be strictly proved. Rice v. Wilson, supra. There are at least three witnesses who, in their affidavits, contradict Stallo's statements, and declare them to be untrue. The evidence of these witnesses destroy the probative force of said Stallo's evidence.

[10] The reorganization committee represents only the depositing bondholders, and is not the same party as the complainant trustee, representing all the bondholders. In the case of Investment Registry v. Chicago & M E. R. Co., the court in the course of its opinion said that, "when a nondepositing bondholder objects to confirmation solely on the ground that the reorganization committee's bid * * * 'was substantially short of the fair value, the answer is that his co-owners of the common mortgage and the common decree offered him the opportunity to deposit his bonds and to share equally with them the benefits of the purchase." In the concurring opinion of Judge Seaman in the same case, he said: "I believe it to be well recognized that reorganizations on the part of bondholders are needful and legitimate means for the purpose of purchasing the mortgaged property at foreclosure sales; that no bondholder can be brought into such reorganization without his consent; that bonds may be purchased of a nonassenting bondholder for the purpose of foreclosing his objections or attempts to interfere with the reorganization plans; that equality in prices so paid is not, generally speaking, an essential requirement in such transaction; and that suppression of competition, either for reorganization or for the purposes of the sale, which may arise in such purchases or arrangements, neither disqualifies the purchasers to become bidders at the sale, nor per se invalidates the sale. Accordingly, in judicial sales of railroad properties these several elements are frequently involved, resulting in a single bid much below the estimated actual value of the properties, and the sale thereupon may rightly be confirmed by the court." 212 Fed. 594, 613, 129 C. C. A. 130, 149.

A great part of the petition of intervention and by counsel for the objectors is taken up with complaints against the proposed plan of reorganization. In addition to what I have already said in reference to the same, I will quote the language of Judge Hough of the United States District Court of the Southern District of New York, who said: "I do not think that courts sit to redraw, or move, or make suggestions, concerning such voluntary business arrangements as organization plans. * * * It is certainly a curious conception of practice which leads a small body of shareholders to seek to answer a foreclosure bill merely because they are dissatisfied with what the foreclosing complainant says it intends to do after the final decree is procured." Conley v. International Pump Co. (September 14, 1915), 237 Fed. 286.

The case before this court is where a few alleged stockholders or bondholders seek to set aside a sale under a decree of foreclosure at which 95 per cent. of the bondholders were the purchasers, and said objecting stockholders are dissatisfied because the purchasers have agreed on a plan in which they declare what they intend to do after they acquire the title and possession of the property sold and bought by them.

[11, 12] This court is of opinion that the following exceptions to the exceptors' and objectors' petition of intervention in this cause should be, and they are hereby, sustained:

Ninth. That the aforesaid exceptions and objections are not sufficient in law or in fact to justify this court in refusing to confirm the sale of the property herein, pursuant to its decree of June 24, 1915.

Tenth. That the said exceptions and objections do not state facts sufficient to entitle the exceptors and objectors to intervene in this cause.

Twelfth. That the exceptors and objectors do not allege any demand upon the defendant railroad company, or request of said company to take any action in behalf of the exceptors and objectors, nor do said exceptions and objections show that, if said demand or request were made, the same had been or would be refused by the defendant railroad company.

Thirteenth. The exceptions and objections do not allege, with the particularity or definiteness required by law, any fraud, collusion, conspiracy, or misrepresentation on the part of any of the parties to this cause in the conduct thereof, or otherwise, or any facts or circumstances upon which the general and indefinite charges of fraud, collusion, conspiracy, or misrepresentation or illegal acts can be predicated or sustained.

Fifteenth. The amount of the present securities outstanding on the property of the defendant railroad company and the amount proposed to be issued are not pertinent or relevant to the exceptions and objections, which allege that the price bid for the property is inadequate.

Eighteenth. Further answering the exceptions and objections, the complainant alleges that the allegations of the exceptors and objectors in respect to the legality of the proposed plan of reorganization are not material or relevant to the motion before the court to confirm the sale.

The petition of intervention is denied, and the petition dismissed; and it is so ordered.

Gregory L. Smith, of Mobile, Ala., and Nash Rockwood, of Saratoga Springs, N. Y., for appellants.

Chas. K. Beekman, of New York City, D. P. Bestor, Jr., of Mobile, Ala., and Jas. N. Flowers, of Jackson, Miss., for appellee.

Before PARDEE and WALKER, Circuit Judges, and CALL, District Judge.

PER CURIAM. This is an appeal from a decree dismissing an intervention attacking the sale of a railroad under foreclosure proceedings, and also from a decree of confirmation of the sale. Judge Toulmin, in dismissing the intervention and confirming the sale, gave elaborate and satisfactory reasons, in which we concur.

The decrees appealed from are affirmed.