[No. 24917. Department Two. August 1, 1934.]

ISAAC COLSKY, *Respondent,* v. EYRES STORAGE & DISTRIBUTING COMPANY *et al., Appellants.*[1]

[1]Reported in 34 P. (2d) 1114.

*McClure & McClure,* for appellant Eyres Storage & Distributing Co.

*Roberts, Skeel & Holman,* for appellant Clise.

*Edward H. Chavelle,* for respondent.

Tolman, J.—This action, when finally submitted to the trial court, presented the situation of a plaintiff suing upon certain bonds secured by a trust deed, but, having waived the security, the plaintiff sought only a money judgment against the maker. The case was tried to the court, resulting in a money judgment against the principal defendant (the maker) in the amount demanded. Both the maker of the bonds and the trustee, who was dismissed, feeling aggrieved by the judgment, have appealed. No motion to dismiss the appeal of the trustee has been interposed, and we shall assume, without deciding, that he has an appealable interest.

It appears that Eyres Storage & Distributing Co., a corporation, desiring to erect or acquire a building suitable for its business needs, present and prospective, on May 1, 1926, executed and delivered to William D. Comer, as trustee, a trust deed covering the real property thus to be used, the fee simple title then being in it, to secure the payment of its bonds to be issued, aggregating in face value $240,000. The trust deed was duly filed for record on May 12, 1926. William D. Comer became a sales agent for the distribution of these bonds to the investing public, and thereafter in 1927 and in 1929 sold to the respondent for value the three bonds here sued upon.

The semi-annual interest coupons attached to the bonds were paid as they matured until November, 1932, but the coupons which matured on November 1, 1932 and since, have not been paid, and are wholly in default. Shortly after the first default, which oc-

curred on November 1, 1932, this action was instituted. It seems to be admitted that, prior to the default and the bringing of this suit, the appellant Charles F. Clise had duly and regularly been made the successor to William D. Comer as trustee.

The principal question here involved depends upon the terms of the bonds, and as to whether they contain any valid and binding restriction against the maintenance of such an action as this by the individual holder.

Each bond contains an expressed agreement to pay a specified sum of money on a day certain with interest at the rate of seven per cent per annum, payable semiannually, and further:

"This bond is one of a series of four hundred sixty-five (465) bonds, numbered consecutively from one (1) to four hundred sixty-five (465), both inclusive, of like form, tenor and effect except as to number, denomination and time of maturity thereof, amounting in the aggregate to the principal sum of two hundred forty thousand dollars ($240,000.00); [then follows a detailed classification and description of the bonds as to denominations, etc.]. The payment of all of said bonds, together with interest thereon, is equally and ratably and without priority or preference of any bond over any other by any reason whatsoever, secured by an indenture in the nature of a trust deed, bearing even date herewith, duly executed, acknowledged and delivered by the mortgagor (and filed and recorded in the office of the county auditor of King County, Washington), to William D. Comer of Seattle, Washington, as trustee.

"For a description of the mortgaged property and the nature and extent of the security, reference is made to said indenture, to all provisions of which this bond and each coupon hereto attached are subject, with the same effect as if the same were herein fully set forth.

. . .

"In case of default in the payment of interest or of the principal of any of said bonds or in case of default in the performance of any of the covenants or condi-

tions of said indenture, the principal of this bond may become due and payable before its regular maturity, together with interest accrued thereon, as provided in said indenture.

"Said indenture, and this bond, as well as all of the other bonds aforesaid, are to be taken and considered as parts of one and the same contract."

We have recently decided a like question in the case of *Moody v. Pacific Steamship Co.*, 174 Wash. 256, 24 P. (2d) 609, and appellants contend that that case is controlling, while the respondent, relying upon the general doctrine as expressed in *Bright v. Offield*, 81 Wash. 442, 143 Pac. 159, maintains that here the trust deed is merely ancillary, and its terms cannot be read into the bonds; that the bonds are negotiable instruments containing a distinct promise to pay, and that none of the language used in the bonds is sufficient to defeat the right of the individual holder to sue.

Whatever may be said as to the meaning of the language of the bonds which precedes the final sentence, hereinbefore quoted, we think that sentence is clear, certain, and unambiguous, not open to judicial construction, and, by the purchase and acceptance of the bonds which provided in plain language that the trust deed was a part of the contract, the purchaser became bound by all of the terms of the trust deed as effectually as though all of the provisions of the trust deed were set forth and embodied in each of the bonds. *Benham v. Ham*, 5 Wash. 128, 31 Pac. 459, 34 Am. St. 851; *Hanna v. Savage*, 7 Wash. 414, 35 Pac. 127, 36 Pac. 269; *Tacoma Mill Co. v. Northern Pacific Railway Co.*, 89 Wash. 187, 154 Pac. 173; 13 C. J. 530; and *Allan v. Moline Plow Co.*, 14 Fed. (2d) 912.

Since, then, the contract is evidenced by both what is written into the bonds and what is written into the trust deed, we must consider the pertinent language

of the latter in connection with the already quoted wording of the former. The trust deed, among other things, contains the following:

"IN TRUST NEVERTHELESS, for the equal and proportionate benefit and security of all present and future holders of the bonds and coupons issued and to be issued under and secured by this indenture, and for the enforcement of the payment of said bonds and coupons according· to the tenor and true intent and meaning thereof and of the provisions and stipulations of this indenture, without preference, priority or distinction as to lien or otherwise of one bond over any other bond by reason of priority in time of execution, issuance or negotiation or date of maturity thereof, or by reason of any other cause, . . .

"In case default shall be made in the payment of the principal or of any interest or income tax payments on any of said bonds, or in the due observance or performance of any covenant or condition whatsoever in this indenture, required to be kept or performed by the mortgagor, then and in any such case the trustee, in his discretion, and without any action on the part of any bondholder, may, and upon the written request of the holders of not less than one-fourth in amount of the bonds then outstanding shall, or in case of his refusal or failure so to act within thirty (30) days after such request, the holders of not less than twenty-five per cent. (25%) in amount of said bonds may, declare the principal of all bonds hereby secured and then outstanding to be due and payable immediately, and upon such declaration the said principal together with the interest accrued thereon, shall become and be due and payable immediately, at the place of payment aforesaid, anything in this indenture or in said bonds to the contrary notwithstanding. . . .

"In case default shall be made in the payment of the principal or of interest or any income tax payment on any of said bonds or in the due observance or performance of any covenant or condition whatsoever in this indenture required to be kept or performed by the mortgagor, the trustee may, without any action on the part of any bondholder, and with or without declaring

said bonds due, and, upon the written request of the holders of not less than one-fourth in amount of said bonds then outstanding, shall institute such suit or suits, in equity or at law, in any court of competent jurisdiction, to enforce and protect any of his rights or the rights of the bondholders hereunder, as he may deem proper, and especially may institute proceedings to foreclose this indenture in any manner provided by law and to obtain a sale of the premises under order of court. . . .

"Whenever under the provisions hereinabove contained, it shall have become the duty of the trustee to institute legal proceedings upon the written request of the requisite number of bondholders, and upon deposit or tender of deposit of the requisite number of bonds with the trustee and upon tender of proper indemnity, and the trustee shall have wrongfully or unreasonably refused or failed to act within thirty (30) days after such request and tender of indemnity, then and in any such case, but under no other condition, the same number of bondholders, who, under the provisions hereof, have the right to demand action by the trustee, may jointly institute such proceedings in law or equity as it was the duty of the trustee to institute, but for the equal benefit of all holders of the bonds and coupons then outstanding. Every holder of any of the bonds hereby secured (including pledgees) accepts the same subject to the express understanding and agreement that every right of action, whether at law or in equity, upon or under this indenture, is vested exclusively in the trustee, and under no circumstances shall the holder of any bond or coupon, or any number or combination of such holders, have any right to institute any action at law upon any bond or bonds or any coupon or coupons, or otherwise, or any suit or proceeding in equity or otherwise, except in case of refusal on the part of the trustee to perform any duty imposed upon him by this indenture after request in writing by the holder or holders of at least twenty-five per cent. (25%) in amount of said bonds as aforesaid. No action at law or in equity shall be brought by, or on behalf of, the holder or holders of any bonds or

coupons, whether or not the same be past due, except by the trustee or by the requisite number of bondholders acting in concert under the provisions of this section for the benefit of all bondholders; it being the intent hereof that no one or more holders of said bonds shall have the right in any manner whatsoever to affect, disturb or prejudice the lien of this mortgage by his or their action, except in the manner provided. . . . "

Since it is undoubtedly well settled law that, under the conditions here shown, the terms of the contract are to be gathered from the language of both the bonds and the trust deed, and since such language is, in legal effect, the exact language considered in the case of *Moody v. Pacific Steamship Co., supra,* we need not repeat what is there said. Being satisfied that the *Moody* case is both sound in law and just and equitable in its practical application, we reaffirm its doctrine.

The judgment appealed from is reversed, with directions to dismiss the action.

BEALS, C. J., BLAKE, GERAGHTY, and HOLCOMB, JJ., concur.