[No. 25294.   Department Two.   March 7, 1935.]

O. C. MOORE, *Appellant,* v. TUMWATER PAPER MILLS COMPANY, *Respondent,* P. C. SHINE, *Intervener-appellant.*[1]

[1] Reported in 42 P. (2d) 29.

46

*O. C. Moore, Richard B. Harris,* and *Yantis & Brodie,* for appellants.

*Griffith, Peck & Coke, Shorts & Denney,* and *Clinton H. Hartson,* for respondent.

STEINERT, J.—This is an action brought by a bondholder to foreclose a securing trust deed, or mortgage. Subsequent to the filing of an amended complaint, a second bondholder intervened in the action and adopted the amendatory pleading as his own. Demurrers to the complaint and amended complaint having been sustained, the plaintiff and intervener declined to plead further, whereupon the court entered an order dismissing the action. From that order, this appeal was taken. The plaintiff and intervener, occupying the same position in the action, have joined in their briefs. They will hereinafter be referred to as the appellants.

The respondent, a Washington corporation, on May 1, 1929, issued a series of first mortgage bonds in the aggregate amount of four hundred thousand dollars and in denominations of five hundred dollars and one thousand dollars, respectively, of which appellants held bonds in the total amount of five thousand dollars. The bonds bore interest at the rate of seven per cent per annum, evidenced by coupons payable on May first and November first of each year, beginning November 1,

1929, and ending May 1, 1939, at which time the entire bond issue was to mature. As security for the bonds, respondent executed a trust deed, or mortgage, covering both real and personal property in this state, to Pacific National Bank, of San Francisco, as trustee, and The Security Bank & Trust Company, of Olympia, as co-trustee. Subsequently, The Security Bank & Trust Company became insolvent and resigned its trust, and thereupon Title and Trust Company, of Portland, succeeded it as co-trustee.

The bonds made reference to the trust deed, or mortgage, for a description of the property mortgaged, the nature and extent of the security and rights of the holders of the bonds, the powers and duties of the trustee and co-trustee, the obligations of the company, and for a complete statement of the terms and conditions under which the bonds were issued. It was specifically recited in the bonds that such reference to the mortgage was made with the same force and effect as if the provisions in the mortgage were fully set forth in the bonds.

The trust indenture is a lengthy document of twenty-one articles, with many sectional subdivisions, and sets forth in detail the terms and conditions of the mortgage.

Article XII, § 2, provides that, upon default, as defined in the indenture, the trustee may, and upon the written request of the holders of twenty-five per cent in amount of the bonds outstanding shall, declare the principal amount of all such bonds immediately due and payable.

Article XII, § 10, so far as it is material here, reads as follows:

"Every holder of any of the bonds secured hereby accepts the same subject to the express understanding and agreement that every right of action, whether at

law or in equity, under this instrument, is vested exclusively in the TRUSTEES, and under no circumstances shall the holder of any bonds or coupons or any number of such holders, have the right to institute any action at law, or any suit or proceeding in equity, or otherwise, under this instrument, or upon any bond or coupon secured hereby for the purpose of enforcing any covenant or remedy herein or in said bonds or coupons contained, or to foreclose this mortgage, except in case of the refusal on the part of the TRUSTEES to comply with any duty imposed on them in respect of any covenant of foreclosure after demand by the holder or holders of 25% in amount of the face value of the bonds then outstanding, and the production of such bonds by the holder or holders thereof to the TRUSTEES and the giving to the TRUSTEES of indemnity satisfactory to them securing them against liability by reason of the action so requested and agreeing to pay all costs and expenses of the TRUSTEES incurred by the TRUSTEES in acting upon such request. The TRUSTEES shall have twenty days after being so requested within which to decide whether or not they will comply with such request.''

Article XV, § 2, provides that the trustees shall not be required to take notice of any default or to take any action in respect of any default unless notified or requested in writing by the holders of at least twenty-five per cent of the amount of the bonds outstanding.

The interest coupons maturing on and subsequent to May 1, 1931, have not been paid. Real and personal property taxes for the years 1930 to 1932, inclusive, aggregating approximately twenty thousand dollars, are delinquent and unpaid.

Added to these facts, to which both parties advert in their briefs, are the following allegations made by the appellants in the amended complaint in support, and forming the basis, of their cause of action: (1) That the company is insolvent; (2) that respondent, without the knowledge or consent of the bondholders,

wrongfully leased to Columbia River Paper Mills and Oregon Pulp & Paper Company, both of which are foreign corporations, and permitted those corporations to remove from this state certain of the mortgaged personal property, of a value in excess of twenty thousand dollars; (3) that, for more than a year last past, the company had *urged* the bondholders to consent to vital modifications of the original trust indenture, which *would* result in the bondholders accepting the promissory notes of the company in lieu of interest coupons and in permitting the company to lease additional machinery and equipment to the two Oregon corporations; that such modifications would be unfair to the company and its bondholders, and are part of a collusive attempt to acquire control of seventy-five per cent of the bonds and thereby prevent the holders of any other bonds from instituting any action upon the bonds or upon the mortgage; and that seventy-five per cent of the bondholders have already accepted the proposal and approved the intended modifications; (4) that the directors and active officers of the company and of the Oregon corporations are practically identical, and are all dominated by one individual; that these corporations and the trustees of the local company have conspired, and are attempting, to *persuade* the bondholders to agree to such modifications of the trust indenture, with the view of releasing certain of the mortgaged property from the encumbrance of the trust indenture, diverting the assets of the company, and preventing a foreclosure of the mortgage; and that the holders of more than seventy-five per cent of the bonds have responded favorably to such solicitations; and (5) that the provisions of the bonds and mortgage, set forth above, are violative of the fourteenth amendment to the Federal constitution and Art. I, §§ 3 and 12, of the state constitution, in that the company and

50

the bondholders are deprived of the right freely and equally to resort to the courts.

The assignments of error relate to the sustaining of the demurrer and the entering of the order of dismissal.

Appellants present several propositions on which they rely for reversal. Their first proposition is that neither of the present trustees is domesticated in this state, and hence, could not maintain any proceeding for the protection of the bondholders. From this, it is argued that the right to maintain such action must rest in the appellant bondholders. Under this head, appellants seemingly make two contentions: (1) That the trustees, being foreign corporations and not having paid a license fee to the state of Washington, as required by Rem. Rev. Stat., § 3842 [P. C. § 4647], could not commence or maintain any action therein; and (2) that, not having qualified as trustees under the laws of this state relative to banks and trust companies, they could in no event discharge the active duties of trustees therein.

As to the first contention, it is sufficient to say that the trustees have not commenced, and are not now seeking to maintain, any action in this state. This action was not brought by the trustees, but was brought by individual bondholders, upon the theory that the trustees would at present be disqualified to bring it. If the trustees should in the future attempt to bring foreclosure proceedings in this state, this initial question might then, perhaps, be a pertinent one; but even then, there would be the preliminary question whether the trustees were actually doing business in this state, or were attempting to perform any active duties of the trustees therein. If they were not, then they would not be required to pay an annual license fee. *Bank of Gresham v. Johnson,* 143 Wash. 24, 254 Pac.

464; *Morse v. Holland Trust Co.,* 184 Ill. 255, 56 N. E. 369.

■ As to the second contention, it is to be noted that the amended complaint does not allege that the trustees are entirely without corporate capacity as such, but merely that they have not qualified to act as trustees in this state; in other words, there is no allegation of any fact that would prevent the trustees from qualifying in this state should they so desire, but only that they have not as yet done so. But assuming that the trustees should attempt to act, or are now acting as such in this state, in defiance of the statute, the appellants could not raise that question. Whether the trustees are attempting to perform corporate acts in violation of the statute relating to banks and trust companies, is a question that can be raised only by the state in a proper proceeding instituted for that purpose. *Frost v. Puget Sound Realty Associates,* 57 Wash. 629, 107 Pac. 1029; *Latshaw v. Western Townsite Co.,* 91 Wash. 575, 158 Pac. 248; *Haynes v. Central Business Property Co.,* 140 Wash. 596, 249 Pac. 1057; *Spokane Merchants Ass'n v. Spokane Dry Goods Co.,* 162 Wash. 577, 299 Pac. 371; *Thomle v. Soundview Pulp Co., ante* p. 1, 42 P. (2d) 19.

The case of *In re Wallace's Estate,* 164 Wash. 576, 3 P. (2d) 996, cited and relied upon by appellants, is not applicable to the present situation, for the reason that, in that case, it appeared that the state itself was resisting the attempt of the non-resident corporation to perform what was declared to be the active duties of a trust in this state without compliance with the law relating to banks and trust companies.

■ Appellants' next proposition is that, so far as the trustees are concerned, the trust indenture is void and unenforcible. This proposition is somewhat akin to, and an extension upon, appellants' first propo-

sition. While the law of this state with reference to banks and trust companies forbids corporations to carry on a trust business except in compliance with the statute, it does not operate to declare the trust instrument void or unenforcible. The law simply withholds the right of a corporation to act as a trustee in this state until it shall have complied with the statute, and if the trustee offends against the law, it is liable to a penalty, but that is the only result consequent upon its act. *Mutual Reserve Ass'n v. Zeran,* 152 Wash. 342, 277 Pac. 984; *Spokane Merchants' Ass'n v. Spokane Dry Goods Co.,* 162 Wash. 577, 299 Pac. 371; *Martin v. Bankers' Trust Co.,* 18 Ariz. 55, 156 Pac. 87. Where active duties are required to be performed and the trustee is unable to perform them because of its non-compliance with local law, no doubt the court could, in a proper case, remove the trustee and appoint another in its stead. *Morse v. Holland Trust Co.,* 184 Ill. 255, 56 N. E. 369; 17 Fletcher Cyc. Corp., § 8383. But that situation is not before us.

Appellants' next proposition is that the restrictive provisions of the trust indenture, above recited, are unconstitutional and void, in that they deprive the company and its bondholders of all right of action, and tend to oust the courts of their inherent jurisdiction. This question has recently been presented to this court and has been definitely set at rest in this jurisdiction. *Moody v. Pacific Steamship Co.,* 174 Wash. 256, 24 P. (2d) 609; *Colsky v. Eyres Storage & Dist. Co.,* 178 Wash. 404, 34 P. (2d) 1114. The provisions of the bonds and of the trust mortgages in those cases were practically the same in language, and identical in effect, with the provisions of the bond and mortgage in this case. We held in those cases that such provisions were not to be viewed as tending to oust the courts of their jurisdiction, but rather to be

viewed as affording a benefit and protection to all the bondholders, and as tending to avoid any injury to, or impairment of, the security of the lien by reason of some advantage sought to be taken by an individual bondholder in an independent action.

The great majority of the courts hold that such provisions merely impose a condition precedent to bondholders' rights to individual action, that they constitute agreements which the bondholders are at liberty to make, and that they are not illegal or contrary to public policy. *Seibert v. Minneapolis, etc. Ry. Co.*, 52 Minn. 246, 53 N. W. 1151, 20 L. R. A. 535, 38 Am. St. 530; *Southern National Bank v. Germania Mfg. Co.*, 176 N. C. 318, 97 S. E. 1; *Rowe v. Louisiana Agricultural Corp.*, 155 La. 241, 99 So. 206; *Allan v. Moline Plow Co.*, 14 Fed. (2d) 912; *Employers' Re-insurance Corp. v. Boston Mutual Life Ins. Co.*, 45 Fed. (2d) 593; *Home Mortgage Co. v. Ramsey*, 49 Fed. (2d) 738; *Craig v. Consolidated Cement Corp.*, 69 Fed. (2d) 613; *Central West Public Service Co. v. Craig*, 70 Fed. (2d) 427; *Harvey v. Illinois Power & Light Corp.*, 3 Fed. Supp. 489; 7 Fletcher Cyc. Corp., p. 326, § 3158; 27 Columbia Law Review, 582 *et seq.* We subscribe to that view.

Appellants' final contention is that their allegations of insolvency, fraud and collusion are sufficient to excuse non-compliance with the provisions of the trust indenture. The charge of insolvency relates, of course, to the company; the charge of collusion and fraud relates to both the company and the trustees.

It is true that, according to the allegations of the amended complaint, the company is insolvent. But there is no allegation of fact that the trustees have disclaimed any intention of foreclosing the mortgage, or have refused or unreasonably neglected to foreclose it, or that the trustees are acting in hostility to the

bondholders. To the contrary, appellants' action goes wholly upon the theory that the trustees have no power to act at all in that regard; moreover, it is admitted that whatever has been done has been approved by seventy-five per cent of the bondholders.

Under the provisions of the trust indenture, the trustees *may*, for any default, declare the principal of all outstanding bonds immediately due and payable, and *may* take any appropriate action, including that of having a receiver appointed. Under the same provisions, however, the trustees are not required to take such action except upon the written request of the holders of twenty-five per cent in amount of the bonds then outstanding. There has been no such request. As we have already stated, such provisions are, and have repeatedly been held to be, reasonable and valid.

It is only in extreme cases, arising out of arbitrary refusal on the part of the trustee to act, unreasonable neglect in the protection of the rights and interests of the bondholders, the assumption of some position which is hostile to the bondholders or prejudicial to their interests, or a vacancy in the office of trustee, that the bondholders may have an individual right of action. But such refusal, neglect, hostility or vacancy must be alleged and proved. *Fidelity Trust Co. v. Washington-Oregon Corp.,* 217 Fed. 588; *Palmer v. Bankers' Trust Co.,* 12 Fed. (2d) 747; Jones on Corporate Bonds and Mortgages (3rd Ed. of Railroad Securities), § 388, p. 427; 7 Fletcher Cyc. Corp., § 3153, pp. 319-320. In the case at bar, there is no charge of breach of trust or of refusal to act, of hostility of position, or of vacancy in office.

As to the charges of fraud and collusion, it may be said, first, that they were not made categorically or positively, but only upon information and belief. Further, they were not alleged as traversable

facts, but simply as conclusions. But beyond that, they allege nothing, as a matter of fact, which the company or the trustees did not have the right to do. It is not alleged wherein the leasing of the machinery was, or would be, wrongful under the circumstances as they existed. Again, if the company or the trustees sought the approval of the bondholders to a proposed modification of the trust indenture and obtained the approval of some seventy-five per cent of such holders, appellants can not complain that it left the non-consenting bondholders less than twenty-five per cent in number.

There is no allegation of fact that any bondholder has been defrauded. There is no allegation that the trust deed has, in fact, been modified; and a reference to the proposed modification, incorporated into and made a part of the complaint, shows that it was to become effective only when approved by all the bondholders. General allegations of fraud, collusion or bad faith are insufficient, in the absence of allegations of fact themselves giving rise to an inference of fraud. *Continental & Commercial Trust & Savings Bank v. Allis-Chalmers Co.*, 200 Fed. 600; *Fidelity Trust Co. v. Washington-Oregon Corp.*, 217 Fed. 588; *Rospigliosi v. New Orleans M. & C. R. R. Co.*, 237 Fed. 341; *Harvey v. Illinois Power & Light Corp.*, 3 Fed. Supp. 489.

Appellants did not show sufficient excuse for non-compliance with the provisions of the trust mortgage requiring written request of the holders of twenty-five per cent of the outstanding bonds and refusal by the trustee to act, before institution by appellants of foreclosure proceedings. The demurrer to the amended complaint was properly sustained.

The judgment is affirmed.

MILLARD, C. J., TOLMAN, HOLCOMB, and BLAKE, JJ., concur.