**STATE ex FISHER v SHERMAN et**

Ohio Common Pleas, Trumbull Co

Decided Feb 14, 1938

Paul E. Kightlinger, Warren, for plaintiff.
Claude C. Smith, Philadelphia, for de-
fendant, the Automatic Voting Machine
Corporation; Paul Reagen, Prosecuting At-
torney, Warren, for other defendants.

## OPINION

By GRIFFITH, J.

This proceeding is for the purpose of testing the legality of four separate written contracts, entered into by the defendant, the Automatic Voting Machine Corporation, of Jamestown, New York, on the one part, and the board of elections of Trumbull County, Ohio on the other part. The questions presented must be decided not according to the beliefs or desires of any portion of the people, minority or majority, but according to the evidence produced in open court, and the law applicable thereto.

It would not be a profitable use of time to go into a full statement of all the facts in this case. They are known to counsel in the case.

This court, on the 18th of October, 1937, granted a temporary order, restraining the defendants from making any payments under these contracts; and the plaintiff now seeks to have that order made permanent. The ground upon which the relief prayed for is sought is that the defendants the board of elections, as public officers, sought to exercise powers not conferred upon them by law, to the injury of plaintiff and others.

It is alleged in the petition that four contracts have been entered into by the board, to-wit: Exhibits "A", "B", "C" and "D", for the acquisition of voting machines for Trumbull County.

The first contract, plaintiff's exhibit "A", was entered into on the 19th of February, 1937, which provides that the Automatic Voting Machine Corporation rented to the county, for use in the August primary election, fourteen U. S. Standard voting machines of the 9-party row, 40-candidate type, each accompanied by one instruction model, at the rental price of $75 for each machine, f.o.b. Jamestown, N. Y.; with the right of purchasing said machines at the sale price of $1,040 each.

Contract "B" was entered into on the 14th of September, 1937, between the same parties, providing for the rental, for use in the November elections, 1937, of seventy-three voting machines, of like type, at the rental price of $7,300; and the third item in this contract provided for the rental of voting machines for August primary, 1938, with a right to purchase the machines at

$1,080 each, upon which credit would be allowed for the rentals previously paid.

Contract "C" was entered into on the 2nd of October, 1937, providing for the renting of one voting machine for November 2, 1937, election, at $100 rental; with a right of purchasing the machine at $1,080, and to have the rentals paid credited on the purchase price.

These three contracts were all entered into between the board of elections and the voting machine company, without any authorization by the board of county commissioners; in fact, the county commissioners had, on the 10th of September, 1937, voiced their disapproval of the acquisition of voting machines in Trumbull County. The contracts were entered into without any advertising for competitive bids, and without any certificate by the county auditor that the funds were in the treasury, and available for such use.

The fourth, and last written contract entered into, between the voting machine corporation, and the board of elections reads as follows:

"This agreement made in duplicate pursuant to authorization of the board of county commissioners and §4785-161a, GC, this 8th day of November, 1937, by and between the Automatic Voting Machine Corporation of Jamestown, New York, party of the first part, hereinafter referred to as "company" and the board of elections of and for the County of Trumbull, State of Ohio, party of the second part and hereinafter referred to as the "county"; WITNESSETH, That for and in consideration of the agreements hereinafter stated and expressed, the parties hereto covenant and agree with each other as follows:

"First, the company agrees to rent and re-rent 100 United States Standard Voting Machines, of the nine-party row, forty candidate type, similar to the 75 voting machines used in parts of the county at the election held November 2, 1937, (and it is agreed by the parties hereto that those 75 machines shall be a part of the 100 each accompanied by one instruction model at the following rental prices, such rental prices to be paid on or before July 1st of each year:

"10,525.72 plus cost of delivery of 25 machines to the county for 1938, and $8,675.58 each year thereafter beginning 1939, and including 1952;

"Provided, however, that the rental for the year 1938 shall be credited with and reduced by the sum if any which the county pays the company for the use of its voting machines at elections during the year 1937.

"Second, the company agrees that if and when the county shall have paid it, the total rental from 1938 to 1952 inclusive described above, no further rental need be paid and the company will at the option of the county give it a bill of sale for said machines.

"Third, the county agrees that should it elect to rent and re-rent said 100 voting machines it will give the company written notice of such intention on or before April 1 each year and pay the rental for such year specified above on or before July 1 each year such machines are rented and re-rented.

"Fourth, the county further agrees that it will be responsible for the safety and good care of said voting machines during the time they are in the county's possession, and, if any of said machines shall in any way become damaged during such time the county will pay for such repairs as shall be necessary to put said machines in perfect condition, and the county further agrees that, should it not rent or re-rent said machines in any year it will on or before May 1st of said year return said machines to the company f.o.b. cars Jamestown, New York, all transportation charges prepaid.

"Fifth. . The county further agrees that said machines while in the possession of the county, shall not be subject to any personal property tax, and no such tax shall be imposed thereon.

"Provided, however, that should such tax be imposed upon such machines this agreement of the county to the contrary notwithstanding, and such tax be paid then and in that event in consideration of the reduced annual rental specified above, the county agrees to pay additional rental equal to such tax for all years in which such tax is paid.

"In witness whereof the parties have hereunto set their seals and duly executed this agreement this 8th day of November 195..

"Automatic Voting Machine

"By Russell F. Griffen, Vice President.

"ATTEST: Martin L. Badhorn, Secretary

"Board of Elections of Trumbull County, Ohio.

"By Clyde Sherman, Chairman

"Robert Ferrell, Clerk.

      "Margaret McLain,

      "Anna L. Brooks

      "Herbert L. Fisher

"Jamestown, New York, November 8, 1937.
"Board of Elections
"County of Trumbull
"Warren, Ohio
"Dear Sirs:

"In consideration of your rental contract covering 100 voting machines which you are about to make with us, of even date herewith, we agree that if all rentals which may become due thereunder are promptly and fully paid you shall have the right to purchase said voting machines on or before August, in any of the following years at the prices indicated provided the rental for such year and prior years has been paid in full:

| | | | |
|---|---|---|---|
| 1938 | $98,000.00 | 1939 | $92,264.42 |
| 1940 | 86,356.77 | 1941 | 80,271.89 |
| 1942 | 74,004.47 | 1943 | 67,549.02 |
| 1944 | 60,899.91 | 1945 | 54,051.33 |
| 1946 | 46,997.29 | 1947 | 39,831.63 |
| 1948 | 32,248.00 | 1949 | 24,539.86 |
| 1950 | 16,600.48 | 1951 | 8,422.91 |

"Very sincerely yours,
"Automatic Voting Machine Corporation,
"Jamestown, N. Y.
"Russell F. Griffen."

On November 5, 1937, the board of elections made this recommendation, in writing, to the board of county commissioners:
"Trumbull County Commissioners,
"Court House, Warren, Ohio

"Based upon the use of voting machines at the election on November 2, 1937, the board of elections unanimously recommend the acquisition of voting machines for use at elections in Trumbull County."

On the same date, the board of county commissioners, at an adjourned meeting, there being but two members present, Adams being absent from the city, passed the following resolution, and spread it upon the records:

"Moved by Neal Duck, seconded R. R. Goddard, that the recommendation dated November 5, 1937, submitted by the Trumbull County Board of Elections, recommending the acquisition of voting machines for use at elections in Trumbull County, be hereby acknowledged; and the board of county commissioners, of Trumbull County, Ohio, authorize the acquisition of such voting machines out of current revenue, in accordance with §§4785-161 and 4785-161a, GC; such contract for the acquisition of said voting machines shall be submitted to and approved by the board of elections."

The issues presented by the pleadings in this case require this court to answer clearly, and unequivocally these questions:

First, has the board of elections power and authority to contract for voting machines for experimental use prior to and without authorization of the county commissioners; and, if so, did they properly exercise such powers and authority.

Second, has the board of elections power and authority to acquire voting machines for the county, upon an annual straight rental basis, such rentals to be paid out of current funds, under the authorization of the county commissioners to acquire voting machines out of current funds?

These questions bring us immediately to a careful reading of §§4785-161 and 4785-161a, GC, which sections became effective June 30, 1931.

The pertinent part of §4785 GC, sub-section 161, reads as follows:

"Voting machines may be adopted for use in elections in any county or municipality in the following manner and subject to the following restrictions: The board of county commissioners of any county of the legislative authority of any municipality may on recommendation of the board of elections, authorize the purchase of such voting machines as have been approved in the manner herein provided, respectively for the entire county or for such municipality, either out of current revenue or by the issuance of bonds within the limitations fixed by law."

Sec 4785-161a GC provides as follows:
"When voting machines have been authorized or adopted, a sufficient number of machines shall be purchased or rented by the board of elections so that all polling places within such county, or municipality as the case may be, shall be equipped with voting machines. If it shall be impracticable to supply each election precinct with a voting machine or voting machines at any election following such adoption, or authorization, as many shall be supplied for that election as it is practicable to purchase or rent and the same may be used in such election precincts within the county or municipality as the board of elections may direct, but the additional voting machines necessary to supply all precincts shall be purchased and installed at the next succeeding election; provided that voting machines need not be provided for polling places in unincorporated areas and in villages having less than three hundred vot-

ers where it is not feasible in the opinion of the board to provide precincts of sufficient size to permit an economical use of voting machines. Whenever any municipality has acquired voting machines, and voting machines are later acquired for the entire county, such municipality shall be reimbursed to the extent of the appraised value of such machines, which shall then become the property of the county. The board of elections of any county may, prior to the adoption of voting machines as herein provided, make provision for the experimental use in a limited number of precincts of any make of voting machines approved in accordance with the provisions of this act, and such experimental use shall be as valid for all purposes as if such voting machines had been formally adopted. The board of elections shall have authority to consolidate precincts temporarily for the experimental use of such machines. The board of elections shall see that all such machines are kept in working order, and in good repair, and shall be charged with the custody thereof."

Do these sections of the code require authorization by the board of county commissioners as a condition precedent to the acquisition of voting machines for experimental purposes?

The plaintiff insists that it does.

The legislature has expressly provided that the board of elections of any county may, prior to the adoption of voting machines, in the two manners by statute provided, make provision for the experimental use, in a limited number of precincts; and such experimental use shall be as valid for all purposes as if such voting machines had been formally adopted.

The legislature first provides that voting machines may be adopted for use in elections either upon authorization by the board of county commissioners, or upon a vote by a majority of the electors of any particular county, or political subdivision thereof. It is later provided that the board of elections may provide for the experimental use of voting machines prior to the adoption thereof.

The legislature must have been presumed to have used the word "adoption" in the same sense, and in the same meaning as it was first used; and by its use meant "prior to the adoption of voting machines either upon the authorization by the board of commissioners, or upon the vote of a majority of the electors of any particular county or municipality."

The plaintiff contends that the authority given by the county commissioners, to the board of elections, was to "acquire," and that method of acquiring voting machines is by purchase, and not by unlimited rental. The court can not agree with this limited construction of the word "acquire," for the reason that it is a broader term and more inclusive than merely "to purchase." To acquire is to make property one's own, and property is the right and interest which a man has in chattels, to the exclusion of others.

For the board to acquire these machines need not place upon them the duty to procure title, but it does clothe them with the duty to obtain such an interest in the machines that they shall have the use of them, to the exclusion of all others. It seems clear that the Legislature intended to give the board of elections the right to use voting machines for experimental purposes in such counties, or municipalities as, in their discretion, they might see fit, prior to formal adoption either by authorization of the commissioners, or by a vote of the electors; and

It is the finding of this court that it was clearly the intention of the Legislature, that the board of elections may provide for the use of voting machines for experimental purposes, without the prior necessity either of the authorization of the board of county commissioners, or a vote by the majority of the electors.

The act provides that the board of elections may, prior to the adoption of voting machines, make provision for the experimental use in a limited number of precincts of any make of voting machines approved in accordance with the provisions of this act; and such experimental use shall be as valid for all purposes as if such voting machines had been formally adopted: And has left to the board of elections the determination of the number of precincts in the county in which voting machines could be used for experimental purposes, as well as what elections could be used for experimental purposes. The board could, therefore, choose the political division where they would try the voting machines out, depending upon the different class and kind of voters, and different kind of elections at which machines could be tried. This discretion was left with the board of elections.

There is no evidence of bad faith or fraud, or palpable use of discretion on the part of the board of elections; and it is not

for this court to interfere with the exercise of the wide, discretionary powers of the board of elections, which are given to it by this Legislative Act.

We must bear in mind in the consideration of this case, that no authority, or power, is vested in the county commissioners, to purchase voting machines. The board of county commissioners are without power to contract for the purchase of such machines. The board of county commissioners may not purchase such machines, nor enter into the contracts for the purchase of such, upon the recommendation of the board of elections; nor, even after the electors have voted for the adoption of such machines.

The sole and exclusive authority is vested in the board of elections, to enter into contracts for the acquisition of voting machines; and this board has exclusive authority under this special act of the Legislature.

Clearly, under the provisions of §4785-161a GC, the board of elections had authority to rent machines for experimental purposes, and there is nothing in the wording of this act that limits the experiment to one election; nor can the interpretation of the former act be read into the present voting machine laws in such a manner as to limit the experiment to one single election. It is a discretionary power that is vested in the board of elections, and since that board has not abused that discretionary power in experimenting with the voting machines, the court finds and concludes that the contracts "A" and "C" are valid, legal, binding contracts, duly entered into, and properly included, under full authority of the law, and binding upon the parties thereto.

As to contract exhibit "B", which was entered into on the 14th of September, 1937, the court finds that to be a severable contract.

This contract provided for the rental of voting machines for the August, 1938, primary; and as to that part of the contract, the same is invalid, unenforceable and in excess of the lawful limitation; and, therefore, illegal and void, as to that period of time in excess of the year 1937; but, as to the matters up to January 1, 1938, the court holds that the same is legal and enforceable.

We come now down to contract "D", for testing its legality which is under attack by the plaintiff.

This contract, as heretofore stated, was entered into by the board of elections after it had recommended the acquisition of voting machines to the county commissioners, and after the county commissioners had authorized the board of elections to acquire machines.

The county commissioners authorized the acquisition of these machines, and by so doing did not limit the board of elections to the purchase thereof, for the reason that the commissioners restricted the acquisition to current revenue; and this board of county commissioners well knew there was not available to the board of elections sufficient current revenue to purchase voting machines, and the county commissioners did not appropriate any additional funds for use in the acquisition of such machines.

Contract "D" is a straight annual rental contract, and so far as the evidence is concerned in this case the rentals are reasonable; and the mere fact that the county, should it elect, at a later date, to purchase and get the benefit of the rentals paid, does not transform the contract from a rental contract to a contract to purchase. This contract is a contract to rent 100 voting machines, and the annual rental to be paid on or before July 1st. However, that contract, as it stands today, is not binding the county to expend a single dollar. It is simply a contract to rent the machines on the part of the voting machine company, and the county board of elections shall give notice of its intention on or before April 1st, to pay the rental; and the county has the right, under that option, to pay the rental, and rent the machines for the year 1938. Up until April 1, 1938, the board of elections can not, under the terms of this contract, obligate the county, at any time, beyond the payment of a current annual sum out of the county's current revenue.

Future boards of elections are not bound nor is the county obligated for any future sum. The county's obligation at any one time does not exceed the obligation for the current year, in the sum provided as rental for that year in the contract. Such a sum would be a part of the county's current election expenses, payable out of the appropriations made to the board of elections by the board of county commissioners, in accordance with §4785-20, GC.

Under the evidence, the annual rental called for under the terms of contract "D" represents a saving which the county will enjoy through the use of voting machines, instead of paper ballots. The adop-

tion of voting machines will make possible the reduction of election boards from six to four in number, and the consolidation of numerous voting precincts. The defendants insist with no slight force to their contention, that the electors of Trumbull County will have the distinct benefit of having the future elections conducted in an efficient, speedy and accurate manner, with little or no corresponding increase in the budget needs of the board of elections.

The plaintiff contends that since this contract involves an expenditure of a thousand dollars, or more, twenty days did did not elapse between the introduction of the proposition and the final passage of the resolution. This provision of the code (§2414 GC) applies to the conduct of the board of county commissioners, in their execution of contracts; but, as heretofore stated, this is not a contract by the board of couny commissioners at all. They are not a party to the contract, and have no authority to contract for the acquisition of voting machines. This is a contract between the board of elections and the voting machine company, and there is a total absence of such a restriction in our entire code, with respect to the entering into of such contracts by the board of elections.

As to the matter of competitive bidding, that is a matter that is purely statutory. At common law it was unknown, but in our state we require competitive bidding in certain instances, before a contract of purchase may be had by public authorities. Upon searching the special legislation for acquisition of voting machines, there is no such requirement to be found anywhere; and, in the absence of statutory provision the common law prevails; and

The court finds that competitive bidding is not a pre-requisite for the entering into of a contract either of rental or purchase.

It is sufficient to state that authorities are numerous in support of the adoption of the resolution by the board of county commissioners in the absence of Adams.

The court finds that the resolution was adopted.

Unanimous consent is not required in connection with the authorization of voting machines.

Under the evidence the Automatic Voting Machine Corporation was engaged in Interstate Commerce; and, since the contracts were executed at Jamestown, N. Y., the matter of challenging its right to do business in Ohio, by reason of the absence of a license is not well taken.

The court finds that contract "D" is a straight rental contract, running from year to year, with the option of renewal on or before April 1st of each year; and that the terms of the rental contract are reasonable; and the fact that the contract provides for a vesting of the title in the county, in the event the rentals are paid for the use of the machines over a period of years, does not change its character; and that it is notwithstanding a rental contract with the county enjoying the benefits of title to the machines, if the rental is carried on over a period of years.

It is further insisted by the plaintiff, that the defendant board of elections acted without the benefit of its own legal counsel, the prosecuting attorney. That charge, if well established, could have no bearing on the question of the legality of the contract, and is irrelevant, immaterial and of no legal significance.

The only remaining important question presented is as to the capacity of the plaintiff to maintain his action. It is insisted that the plaintiff has no standing, either in law or in equity, to prosecute the present action, insofar as it involves the rental and use of voting machines for elections held during the year 1937.

The plaintiff, G. P. Fisher, is a resident taxpayer of Champion Township, Trumbull County, Ohio.

In 1937 voting machines were rented by the board of elections for use in the cities Warren, Niles and Girard, and the village of West Farmington, and the township of Bloomfield.

No voting machines were used in Champion Township; and, so far as Champion Township elections, for 1937, were concerned, the same machinery operated in that township in 1937 that had over the years previous thereto.

Sec 4785-20, GC, paragraph "b" provides:

"The compensation of judges and clerks of elections: the cost of renting, moving, heating and lighting polling places and of placing and removing ballot boxes and other fixtures and equipment thereof; the cost of printing and delivering ballots, cards of instructions and other election supplies; and all other expenses of conducting primaries and elections in the odd numbered years shall be charged to the subdivisions in and for which such primaries or elections are held."

Warren, Niles, Girard, West Farmington, and Bloomfield were required, under the provisions of this section, to bear the cost of and expenses attached to the use of voting machines that were used in those subdivisions during the year 1937; and these charges were not charges that in the final Trumbull County had to pay, but they were chargeable back to the various subdivisions. Just how can the plaintiff, a taxpayer in Champion Township, be affected in a pecuniary manner by these charges that will be made, or have been made against these various subdivisions, none of which is the subdivision in which he resides.

The right to maintain a taxpayer's suit is not accorded to a private citizen merely because of general public interest in the question involved. A private citizen is entitled to act only if his burden of taxation is going to be affected by reason of some illegal course of conduct in the application of public funds. A non-taxpayer can not institute a taxpayer's suit. A taxpayer, in order to maintain his suit, must show that he is, or will suffer pecuniary loss or damage, by reason of the illegal conduct complained of. **Pierce v Hagens, 79 Oh St 9; Greene v State Civil Service, 90 Oh St 252; Mulcahy v Akron, 27 Oh Ap 442 (2 Abs 566).**

As to the matter of contract "D", which is for a rental of the machines for 1938, the plaintiff has not suffered any material injury; and, as a taxpayer, will not suffer any injury until and unless the board of elections, after its organization for 1938, elects to rent the voting machines under that contract to rent.

The court feels, however, that it is not necessary to pass upon the capacity of the plaintiff to bring the action, because that might only cause a recurrence of the presentation of the same matters at a later date.

In conclusion, therefore, the court finds that the contracts "A," "B," "C" and "D" are valid and enforceable; and that the relief prayed for by the plaintiff must be, and the same is hereby denied. To which exceptions are saved.