**LICHTER, Plaintiff, v. LAND TITLE GUARANTEE & TRUST COMPANY et, Defendants.**

Common Pleas Court, Franklin County.

No. 188523.   Decided July 5, 1955.

322

Steer, Strauss & Adair, Cincinnati, McClelland & Devennish, Columbus, for plaintiff.

Arter, Hadden, Wykoff & Van Duzer, Cleveland, for defendant, The Land Title Guarantee and Trust Co.

Porter, Stanley, Treffinger & Platt, Columbus, for The Land Title Guarantee and Trust Company.

Dargusch & Caren, Columbus, for defendant, The Ohio National Bank.

Squire, Sanders & Dempsey, Cleveland, for defendants, Ohio Turnpike Commission, Buckeye Union Casualty Co. and Fidelity and Deposit Co. of Maryland.

Frank C. Dunbar, Jr., Columbus, for Ohio Turnpike Commission.

## OPINION

By LEACH, J.

HEARD ON DEMURRERS TO AMENDED PETITION.

In Steer and Adair v. The Land Title Guarantee and Trust Company and Ohio Turnpike Commission, decided May 19, 1953, 65 Abs 33, Harter, J., of this court, in an action brought by a firm of attorneys as plaintiffs, declared that the performance of a contract of June 4, 1952, between The Land Title Guarantee and Trust Company and Ohio Turnpike Commission, called for the unlawful practice of law; that because the legal and proper activity of Land Title in the issuance of policies of title insurance or guaranty could not be effectively separated from the "illegal practice of law" phase of the contract, the entire contract became illegal and void. The amended petition in that case had prayed inter alia "that the Court order defendant The Land Title Guarantee and Trust Company to pay back any sums received by it from defendant Turnpike Commission under said contract." This request was rejected by Judge Harter, his opinion as to such reading:

"The amended petition further prays that this Court order the defendant, The Land Title Guarantee and Trust Company, to pay back any sums received by it from the Ohio Turnpike Commission under said contract. In equity and good conscience, the Land Title Guarantee and Trust Company should certainly do this since they (rather than the Turnpike Commission) were the ones guilty of over-reaching their corporate powers. There is, however, a procedural problem raised at this point. Plaintiffs do not sue as 'taxpayers' in this case. This is not, therefore, a so-called 'Taxpayer's Action.' Even if it were a typical action by 'taxpayers,' as such, to interfere with or direct the acts, measures or proceedings of a public body or its officers or agents, there would still be legal obstacles to the granting of a 'pay-back' order. In the first place, this action is upon the 'State of Ohio' level—not the level of a municipality, or county, or township. There is substantial authority to the effect that a proceeding by a taxpayer to restrain an alleged unwarranted action of public officials cannot be maintained if the state itself is a necessary or proper party defendant, and this is so although the state is not a party to the record. See 52 American Jurisprudence—Taxpayers' Actions. Section 6.

"In the second place, there is substantial authority for the proposition that a taxpayer cannot maintain an action to enjoin the wrongful expenditure of public funds, where such funds were not raised by taxation. The Ohio Turnpike funds were raised through the sale of bonds, not by taxation. Hence, these authorities might well become applicable, should this case be considered a true 'taxpayer's action.' See 52 American Jurisprudence—Taxpayers' Actions, Section 9.

"An annotation in 58 American Law Reports 588 indicates that there

is a sharp difference of authority among the states as to the right of individual citizens to challenge the acts of state officials.

"It is this Court's view that since there is such doubt on this procedural question, the doubt should be resolved by refusing to grant the extraordinary order for paying back all money received by the Land Title Guarantee and Trust Company. In other words, it is our opinion that relief as drastic and harsh as that here requested should be granted only upon clear authority."

In the instant action this same relief, denied by Judge Harter at the behest of attorneys as plaintiffs, is sought by the plaintiff herein (1) as a resident, elector, taxpayer, owner of an automobile, purchaser of gasoline and user of the public highways in the State of Ohio (Second Cause of Action), and (2) as the owner of five Ohio Turnpike Revenue Bonds. (First Cause of Action.) Plaintiff seeks to compel Land Title to repay the sum somewhat in excess of $250,000.00 received by it for the rendition of all of its services under its contract with the Turnpike Commission. Plaintiff also seeks an order compelling the Ohio National Bank, Trustee under a Trust Agreement of June 1, 1952, to restore to the Trust Fund an amount of money equal to that paid to Land Title. (Fourth Cause of Action.) Here plaintiff apparently sues both as a taxpayer and as a bond holder. Finally plaintiff seeks judgment against the individual members of the Turnpike Commission and their sureties on their official bonds, again apparently suing both as a taxpayer and as a bond holder. (Third Cause of Action.) Turnpike Commission is made a party defendant although no specific relief is asked against it, apparently on the theory that Turnpike Commission should act as a conduit for the return of the monies from Land Title to the Trust Funds held by Ohio National.

All of the defendants herein have filed demurrers to the several causes of action on the grounds (1) that the plaintiff has not legal capacity to sue and (2) that the amended petition does not state facts which show a cause of action. All of the defendants except Land Title also demur on the grounds (1) that there is a misjoinder of parties defendant and (2) that several causes of action are improperly joined.

## I

Does the plaintiff as a resident, elector, taxpayer, owner of an automobile, purchaser of gasoline and user of the public highways in the State of Ohio have the legal capacity to bring or maintain this action? To the extent that plaintiff seeks to have returned to the funds of Turnpike Commission, in the hands of the Trustee, an amount of money equal to that paid to Land Title by Turnpike Commission through the Trustee, we believe that the Ohio law is well established that no such right exists.

As stated in 52 American Jurisprudence—Taxpayers' Actions, Section 9, referred to by Judge Harter, the right of a taxpayer to maintain an action to enjoin the wrongful expenditure of public funds, where such funds were not raised for taxation, has been denied in a majority of cases. To this same effect see 131 A. L. R. 1230. Obviously, of course, where a person does not have the legal capacity to maintain an action

to enjoin the wrongful expenditure of public funds, he does not have the legal capacity to maintain a suit for the recovery of money wrongfully expended.

That Ohio has adopted the majority rule in this respect is clear from the decision of the Ohio Supreme Court in the recent case of **State ex rel. Masterson, a Taxpayer, v. Ohio State Racing Commission, 162 Oh St 366.** There the plaintiff as a taxpayer sought to restrain the Racing Commission from expending funds or issuing permits for the conducting of horse racing in this state. The funds there involved had been appropriated by the General Assembly for that purpose. The appropriation, however, was not from general tax revenues of the state but from "The State Racing Commission Fund" established by §3769.10 R. C. All of the income into such fund came from the taxes, fees and income due the State of Ohio "under the provisions of this act." (The Racing Commission Act.) We quote from the Opinion of Weygandt, C. J., at page 369:

"From these provisions it is apparent that the respondent commission is not authorized to expend public funds in excess of the revenues it collects from a special class of taxpayers. It is clear, too, that no part of such expenditures can involve funds collected from taxpayers generally. Furthermore, the relator does not claim to be in the special class of taxpayers from whom these revenues are collected.

"Hence, as held by the lower courts, the relator taxpayer has no special interest in the funds here involved, and he lacks the legal capacity to institute this action."

The first paragraph of the syllabus of the Masterson case reads as follows:

"In the absence of statutory authority, a taxpayer lacks legal capacity to institute an action to enjoin the expenditure of public funds unless he has some special interest therein by reason of which his own property rights are placed in jeopardy."

The instant case appears to be a much stronger case for denying the capacity of a taxpayer to sue than was the Masterson case. There the fund in question was derived from taxation but taxation as to a special class of taxpayers. (Those persons placing bets at the racetrack). If plaintiff herein, as a general taxpayer, had no "special interest" in the funds there involved because such funds were derived from a special class of taxpayers, it should be obvious that plaintiff herein, as a "taxpayer" would have no "special interest" in the funds which were not derived at all from any type of taxation either general or special.

The fund in question here was derived **solely** from the sale of bonds. See §§5537.04 (F), 5537.08 and 5537.11 R. C.

Some reference has been made in the briefs to the question of whether the funds herein were "public money," plaintiff asserting that they were and certain of defendants asserting that they were not. Presumably this issue was discussed because of the language of the first paragraph of the syllabus in **Green v. Civil Service Commission, 90 Oh St 252,** which held that a taxpayer may maintain an action to enjoin

public officers from the commission of acts in excess of legal authority "which contemplate the expenditure of public money." While the Court in the Green case did refer to "public money," it is clear from an examination of the opinion that they were speaking of public money derived from taxation.

The language of Charles A. Leach, J., late of this Court in **Tax Limitation League v. Day, 15 O. O. 122,** at **page 125,** succinctly states the issue involved herein:

"The question here involved is not so much a question of whether the funds arising from the proceeds of the converted coupons are or may be considered public funds for any purpose, or whether they may not—it being possible that under some statutory classifications for the particular purpose of that statute that they may be so considered. The real question here is whether they are public funds in the limited sense of whether or not a taxpayer, as such, has any interest therein, or any legal interest in their recovery."

See also **Hartnett v. Edmonston, 44 Oh Ap 304; State, ex rel. Shafer v. Merrill, 44 Oh Ap 347; Warm v. City of Cincinnati, 57 Oh Ap 43; Leasure v. Taylor, 32 Abs 395; Campbell v. Jaster, 25 Abs 16; State, ex rel. Fisher v. Sherman, 26 Abs 129; Russell v. State Bridge Commission, 16 O. O. 399** and **State, ex rel. Johnson v. Washburn, 30 O. O. 435.**

We believe it clear from all of these cases and especially from the Masterson case that plaintiff as a taxpayer does not have the legal capacity to maintain an action for the recovery into the funds of Turnpike Commission of the monies paid to Land Title or of an amount equal thereto.

We know of no authority by which plaintiff can maintain this action as a "resident" or as an "elector" and the briefs of plaintiff do not even discuss this question. Similar allegations in Russell v. State Bridge Commission, supra, were held to be insufficient to establish capacity to sue.

Plaintiff's allegations that he is the "owner of an automobile," "purchaser of gasoline" and "user of the public highways" in the State of Ohio, are in effect merely allegations that he pays the motor vehicle registration license tax and the gasoline tax. As heretofore stated, however, the fund in question was derived solely from the sale of bonds and none of the tax monies received by the State of Ohio from the sale of automobile licenses or from a gasoline tax, find their way into this fund.

Plaintiff has attempted to show damage to himself as a taxpayer by alleging that the date when Turnpike Project No. 1 will become a part of the Ohio State system of highways and free from tolls to plaintiff and other highway users will be delayed unless the money in question is returned by defendant Land Title to defendant Turnpike Commission; that by delaying the date when the system shall become the property of the State of Ohio, the likelihood is increased that such system will be in a worn-out condition at the time when it becomes State property and will require the expenditures of public funds to make repairs. The fact that the turnpike will be maintained by the Department of High-

ways when the turnpike bonds are fully paid off, does not affect the legal capacity of the plaintiff to maintain an action at this time. Plaintiff may or may not be a taxpayer when the turnpike is turned over to the Highway Department and, in any event, there is no showing that any delay in turning the turnpike over to the Highway Department would cause any additional expenditures of tax monies at any time. Purely from a taxpayer's point of view, the longer the delay in turning the turnpike over to the Department of Highways, the less expenditure of tax funds will be necessary since until the turnpike is finally turned over to the Department of Highways, all maintenance and upkeep is paid for by Turnpike Commission from tolls paid by the users of the turnpike.

## II

Does the plaintiff as the holder of five Ohio Turnpike Revenue Bonds have the legal capacity to maintain an action for the recovery of monies paid by Turnpike Commission to Land Title?

The petition alleges that plaintiff is the owner of five bonds for which he paid the sum of $1000.00 each; that the substance of said bonds is to the effect that Turnpike Commission will pay to the bearer thereof, subject to the terms of a "Trust Agreement" entered into on June 1, 1952, between Turnpike Commission and the Ohio National Bank of Columbus and the City National Bank of New York as co-trustees, from revenues of Turnpike Commission as authorized by §§5537.01 to 5537.23 R. C. The face value of said bonds, together with interest thereon at 3¼% per annum, payable semi-annually on or before June 1, 1992; that this action is brought under and by virtue of §5537.15 R. C.; that plaintiff brings this action not only on his own behalf but also on behalf of all holders of Turnpike Revenue Bonds; that the "Trust Agreement" provides that all payments of the cost of the turnpike shall be made from a fund to be known as the "Construction Fund"; that said "Construction Fund" consists of proceeds from the sale of the aforesaid Turnpike Revenue Bonds; that plaintiff and all holders of said Turnpike Revenue Bonds "have been damaged by the aforesaid expenditures of funds for the reason that the amount of funds available to pay the principal and interest due under the terms of said bonds has been diminished, and the likelihood of the necessity for the issuance of further bonds has been increased."

It is the contention of the defendants that by the terms of the Trust Agreement plaintiff as the holder of five bonds of a total face value of $5000.00 out of a total issue of Three hundred Twenty-six Million Dollars is precluded from bringing this action.

Section 807 of the Trust Agreement, incorporated into the petition, reads as follows:

"Section 807. No holder of any of the outstanding bonds shall have any right to institute any suit, action, mandamus or other proceeding in equity or at law for the execution of any trust hereunder or the protection or enforcement of any right under this Agreement or any resolution of the Commission authorizing the issuance of bonds, or any right under the Turnpike Act or the laws of Ohio, unless such holder pre-

viously shall have given to the Trustee written notice of the event of default or breach of trust or duty on account of which such suit, action or proceeding is to be taken, **and unless the holders of not less than ten per centum (10%) in principal amount of the bonds then outstanding shall have made written request of the Trustee** after the right to exercise such powers or right of action, as the case may be, shall have accrued, and shall have afforded the Trustee a reasonable opportunity either to proceed to exercise the powers herein granted or granted by the Turnpike Act or by the laws of Ohio, or to institute such action, suit or proceeding in its or their name, and unless, also, there shall have been offered to the Trustee reasonable security and indemnity against the costs, expenses and liabilities to be incurred therein or thereby, and the Trustee shall have refused or neglected to comply with such request within a reasonable time; and such notification, request and offer of indemnity are hereby declared in every such case, at the option of the Trustee, to be conditions precedent to the execution of the powers and trusts of this Agreement or for any other remedy hereunder or under the Turnpike Act or the laws of Ohio. **It is understood and intended that no one or more holders of the bonds hereby secured shall have any right in any manner whatever by his or their action** to affect, disturb or prejudice the security of this Agreement, **or to enforce any right hereunder or under the Turnpike Act or the laws of Ohio with respect to the bonds or this Agreement, except in the manner herein provided,** and that all proceedings at law or in equity shall be instituted, had and maintained in the manner herein provided and for the benefit of all holders of the outstanding bonds and coupons."

Since, as stated in the amended petition, plaintiff purports to bring his action as a bond holder under and by virtue of §5537.15 R. C., it is clear that in this action he is attempting to assert a "right under the Turnpike Act or the laws of Ohio" within the meaning of Section 807 and it is equally clear that the plain and unambiguous language of Section 807 would preclude the maintaining of this action in view of the fact that the holders of not less than 10% in principal amount of the bonds then outstanding have not made written request of the Trustees to bring such action.

The amended petition, however, alleges:

"16. That Section 807 of said Trust Agreement, a copy of which is attached hereto and made a part hereof, and marked 'Exhibit B,' purports to limit the right of plaintiff herein and other holders of such Ohio Turnpike Revenue bonds to remedy themselves and said Construction Fund against said acts on the part of defendants, but said provision of said Trust Agreement is invalid, illegal, void and of no effect insofar as it affects this action for the following reasons:

"a. Sec. 5537.12 R. C. (formerly §1213 GC), limits the restrictions which said trust agreement may place upon the individual right of action by Turnpike bondholders to those which are customary in trust agreements or trust indentures securing bonds or debentures of corporations.

"b. Said §5537.12 R. C., further provides that a provision of said Trust Agreement regarding the enforcement of rights and remedies of

Turnpike bondholders must be reasonable and proper and not in violation of law. Said provision of said Section 807 of said Trust Agreement tends to deprive a court of equity of its ordinary, necessary and proper jurisdiction in matters such as the one contained in this action, and is therefore in violation of law.

"c. That plaintiff, when he purchased the certificates described in Paragraph 1 hereof, had no knowledge of the restrictions set forth in said Section 807; that said certificates and said Ohio Turnpike Revenue Bonds contain upon their face the following notation relative to a limitation on the rights of action of holders thereof:

" 'The holder of this bond shall have no right to enforce the provisions of the Agreement (Trust Agreement dated as of June 1, 1952, by and between the Commission and The Ohio National Bank of Columbus, Columbus, Ohio, as trustee), or to institute action to enforce the covenants therein or to take any action with respect to any event of default under the Agreement or to institute, appear in or defend any other suit or proceeding with respect thereto except as provided in the Agreement.'

"and plaintiff when he purchased said certificates had no notice of the actual extent of said restrictions."

In paragraph 16 (c) plaintiff seeks to avoid the limitations contained in Section 807 of the Trust Agreement on the basis that he had no knowledge of the restrictions set forth in such agreement. This same paragraph, however, sets forth in full the language contained on the certificates which language certainly placed him on notice of the limitations contained in the Trust Agreement. The fact therefore that when he purchased such certificates he did not have knowledge of the actual extent of said restrictions is of no import. Sufficient notice having been given to him by the notation on the certificates, he is bound by such restrictions to the extent that they are legally enforceable. In this connection it might also be pointed out that the briefs of the plaintiff, although extensive, at no place assert that he is not bound by such restrictions to the extent legally enforceable.

Paragraph 16 (a), while alleging that §5537.12 R. C., limits the restrictions to those which are customary in trust agreements or trust indentures securing bonds or debentures of corporations, contains no allegation of fact which could be construed as indicating that the Trust Agreement in question in any way violated the provisions of §5537.12 R. C. The fact that the original petition had contained a broad allegation, ordered stricken as being a conclusion, to this general effect may not be considered in determining the demurrer to the amended petition. The effect of the order of the Court ordering the striking of such language from the original petition was to require the plaintifl to allege facts, as opposed to conclusions, if plaintiff desired to make such an allegation. This was not done.

Paragraph 16 (b) asserts that the provisions of Section 807 of the Trust Agreement tend to deprive a Court of Equity of its ordinary, necessary and proper jurisdiction in matters such as the one contained in this action and are therefore in violation of law. Defendants have cited many out of state cases which in general support the validity of restric-

tive provision as to the enforcement by court action of the rights of a bondholder. e. g.: Moore v. Tumwater Paper Mills Co., 181 Wash. 45, 42 Pac. 2nd, 29: Dietzel v. Anger, 8 Cal. 2d, 373, 65 Pac. 2d, 803; Lidgerwood v. Hale and Kilburn Corp., 47 Fed. 2d, 318; Muren v. Southern Coal and Mining Co., 177 M. App. 474, 160 S. W. 835; Crosthwaite v. Moline Plow Company, 298 Fed. 466 and Allan v. Moline Company, 14 Fed. 2nd, 912.

Plaintiff asserts that these cases are distinguishable from the instant case in that some involved action to foreclose the security and in others there was no request made to the trustees to sue on behalf of the bond holders by any bondholder. Plaintiff in turn refers to certain language of other out-of-state cases to the general effect that an individual bondholder has a right to bring an action on behalf of himself and all other bondholders where the trustee has put itself into a position where it cannot faithfully and competently discharge its duty as a fiduciary, even though the indenture contains a provision prohibiting suits by bondholders unless holders of a certain per cent. of bonds have requested the trustee to take action. Rabinowitz v. Kaiser Frazer Corp., 111 N. Y. S. 2d, 539, Campbell v. Hudson and Manhatten Railway Co., 102 N. Y. S. 2d, 878, Birn v. Childs Company, 37 N. Y. S. 2d, 689, 1st Natl. Bank v. Salisbury, 130 Mass. 303 and Florida National Bank of Jacksonville v. Jefferson Standard Life Insurance Co., 123 Fla. 525, 167 Southern, 78, 108 A. L. R. 77.

It is our opinion that the cases relied upon by the plaintiff are distinguishable from the issue presented in the instant case, first, because the amended petition alleged no facts which show that the Ohio National Bank as trustee has put itself into a position where it cannot faithfully and competently discharge its duties as a fiduciary and second, because the cases relied upon by the plaintiff involve fact situations where the obligation under a bond had ripened into a cause of action by virtue of the non-payment of the obligation by the corporation in question.

Plaintiff contends that the Ohio National Bank as trustee has been, in effect, guilty of fraud to such an extent as to disqualify it to continue to faithfully and competently discharge its duties as fiduciary because of the fact that it accepted from Turnpike Commission the requisitions signed by officers of the Turnpike Commission for payment to Land Title. Section 406 of the Trust Agreement provides that Turnpike Commission shall file with defendant Ohio National Bank as trustee the following papers among others:

"(a) A requisition, signed by an officer or employee of the Commission designated by resolution of the Commission for such purpose stating in respect of each payment to be made, among other things: . . . (4) the purpose for which payment is to be made; (5) that the obligation is a proper charge against the Construction Fund . . .; **(6) that there has not been filed with or served upon the Commission notice of any lien, right to lien, or attachment upon or claim affecting the right to receive payment of, any of the moneys payable to any of the persons, firms, or corporations named in such requisition which has not been released or will not be released simultaneously with such payment . . ."**

Plaintiff asserts that on February 23, 1952, and upon diverse occasions thereafter, Paul W. Steer and Robert G. Adair, attorneys at law (plaintiffs in Case No. 185644 and attorneys for the plaintiff in the instant case) advised Turnpike Commission that the contract then proposed to be entered into and ultimately entered into with Land Title, required the practice of law by a corporation and hence was illegal and contrary to law; that on July 22, 1952, Mr. Steer and Mr. Adair filed Case No. 185,644 in this court, praying that the Court find that said title contract was illegal and contrary to law; that Judge Harter of this court subsequently declared said title contract to be illegal and void in its entirety; that such matters were, because of their nature, of a special interest to attorneys and title guarantee and trust companies and were discussed generally among such attorneys and persons associated with such companies; "that plaintiff is informed and believes that defendant Ohio National, through its officers, was informed by members of Commission, persons associated with Land Title, their attorneys, or any or all of them," of the matters heretofore set forth; "that if said claims of illegality and suit set forth in said paragraphs were not known to defendant Ohio National, they should have been known to it by virtue of said publication, public interest and discussion and by reason of its being trustee as aforesaid."

These allegations of the amended petition seek to impose upon the trustee a duty quite different from that imposed by the Trust Agreement to which it was a party. Section 406 of the Trust Agreement, contained in the supplement to the amended petition, requires the trustee, upon receipt of each requisition from Turnpike Commission to pay such item or to deliver to Turnpike Commission a check or draft for the payment thereof. Section 409 provides that the trustee may rely upon such requisition. Section 904 provides that the trustee shall not be responsible for the application of any of the proceeds of the bonds or other money deposited with them and paid out in accordance with the provisions of the agreement. Section 910 provides that the trustee "shall be protected and shall incur no liability in acting or proceeding, or in not acting or not proceeding, in good faith, reasonably and in accordance with the terms of this agreement, upon any resolution, order, notice, request, consent, waiver, certificate, statement, affidavit, **requisition,** bond or other paper or document which it shall in good faith reasonably believe to be genuine and to have been adopted or signed by the proper board or person or to have been prepared and furnished pursuant to any of the provisions of this agreement * * *." The amended petition contains no allegation to the effect that the requisition honored by the trustee was not genuine or that it had not been signed or adopted by the proper board or person.

Is the advice given by Attorneys Steer and Adair to Turnpike Commission on February 23, 1952, to the effect that the Title Contract would require the practice of law by a corporation and the filing of suit by these two attorneys on July 22, 1952, a "claim" within the meaning of Section 406 of the Trust Agreement? We do not believe so. Various cases have been cited by the parties as to the meaning of the word

"claim." The issue is not what does the word "claim" mean in the ordinary sense but what does it mean as contained in the language of Section 406 of the Trust Agreement. Here we believe that it plainly means a claim of a right to receive the whole or a part of the particular payment involved. It is a fundamental rule in the construction of a statute or an instrument that where any particular word is obscure or of doubtful meaning when taken by itself, this obscurity or doubt may be removed by reference to associated words. Here the associated words in Section 406 are "lien, right to lien, or attachment."

It is apparent, therefore, that the allegations of the amended petition make no averments of facts which could be construed as bad faith on the part of the trustee. This being true, the plain language of the restrictions or limitations contained in Section 807 of the Trust Agreement may not be ignored or rewritten by this Court.

The briefs of the plaintiff state that he is not contending that a 10% limitation is invalid as to all cases but is merely contending that the limitation is too broad as to the type of causes of action which it purports to restrict. He contends that to the extent he seeks to replenish the funds of the Turnpike Commission, as contrasted with seeking recovery to be paid from the funds of Turnpike Commission, the restriction is invalid. In effect therefore he is asserting that any requirement that such actions be brought only upon request of a certain percentage of bondholders is invalid and that any bondholder would have the right to bring such action as a mere incident to his ownership of the bond. A similar contention was considered and rejected in the case of Allan v. Moline Plow Company, supra.

In considering the question of the validity of the limitation and whether it tends to deprive a court of equity of its ordinary, necessary and proper jurisdiction, we must consider the question of whether the limitation or restriction in some way unduly interferes with the rights of a bondholder which are inherent from the mere ownership of the bond. These rights ordinarily are to insist upon payment when due and to prevent the dissipation of any fund or any security pledged to the payment of such bonds. What fund is pledged to the payment of the bonds under the Turnpike Act? Sec. 5537.03 R. C. authorizes the Turnpike Commission to issue turnpike revenue bonds "payable solely from revenues." Sec. 5537.11 R. C., provides that the bonds shall contain on their face a statement to the effect that they "are payable solely from revenues pledged for their payment." Sec. 5537.12 R. C., provides that any trust agreement may pledge or assign the "tolls and other revenues to be received" but shall not convey or mortgage any turnpike project or any part thereof. Sec. 5537.01 R. C., defines "revenue" as meaning all tolls, rentals, gifts, grants, monies and all other funds and property coming into the possession or under the control of the Commission by virtue of §§5537.01 to 5537.23 inclusive, R. C., "except the proceeds from the sale of bonds issued under such sections."

It is apparent therefore that the "construction fund" made up from the proceeds of the sale of bonds is not a fund which was pledged in payment to the bondholders herein. While we recognize that under the

provisions of §5537.08 R. C., any surplus in this construction fund is deposited to the credit of the Sinking Fund for such bonds, nevertheless, under the language of the Turnpike Act monies in such "construction fund" are not pledged to the payment of the bonds.

It appears therefore that plaintiff, as a bondholder, is not seeking to enforce any specific right given to him either to collect on his obligation when due or to prevent the dissipation of property or funds pledged to the payment of such obligation.

It of course is true that §5537.12 R. C., authorizes the Trust Agreement to contain additional provisions for protecting and enforcing the rights and remedies of the bondholders as are reasonable and proper and not in violation of law, including covenants setting forth the duties of the Commission in relation to the acquisition of property and the construction, improvement, maintenance, repair, operation and insurance of the turnpike project or projects in connection with which bonds are authorized, the rate of toll to be charged and the custody, safeguarding and application of all monies and provisions for the employment of consulting engineers. These however do not appear to be rights which at common law would be considered to be inherent in the ownership of the bond itself. They are rights which exist only to the extent that the Trust Agreement so provides, and being such, obviously are subject to any limitations as to the right to enforce them contained in such Trust Agreement.

We conclude therefore that the provisions of the Trust Agreement do not deprive a court of equity of its ordinary, necessary and proper jurisdiction, as asserted in paragraph 16 (b) of the amended petition. Thus we conclude that plaintiff as a bondholder lacks the legal capacity to maintain this action.

### III

It is apparent from what we have heretofore stated in this opinion that it is our conclusion that plaintiff as the holder of five Turnpike Revenue Bonds lacks the legal capacity to maintain the first cause of action which seeks recovery from Land Title of some $250,000.00 paid to it by Turnpike Commission under the contract of June 4, 1952; that as a taxpayer, resident, elector, etc. plaintiff lacks the legal capacity to maintain the second cause of action seeking the same recovery against Land Title; and that either as a bondholder or a taxpayer, etc., plaintiff lacks the legal capacity to maintain the fourth cause of action against defendant Ohio National.

In the third cause of action plaintiff seeks recovery against the individual members of Turnpike Commission on their bonds and judgment against their sureties. It would appear from the briefs that plaintiff believes that any monies paid by the individual members of the Turnpike Commission or their sureties for forfeiture of their bonds would be paid into the trust funds held by Ohio National. If this be true, our reasoning as to his lack of capacity to sue, either as a bondholder or as a taxpayer, would be equally applicable to the third cause of action.

Actually §5537.02 R. C., provides that each appointed member of the

Commission, prior to the issuance of any Turnpike Revenue Bonds, "shall give a surety bond to the State in the penal sum of Twenty-five thousand dollars and the secretary-treasurer shall give a bond in the penal sum of Fifty thousand dollars, each surety bond to be conditioned upon the faithful performance of the duties of the office, to be executed by a surety company, authorized to transact business in the state, and to be approved by the Governor and filed in the office of the Secretary of State."

It will be noted, of course, that the bond is given "to the State." Thus it would clearly appear that any forfeiture of the bond or payment as the result of a breach of this condition would be to the State of Ohio. Here, of course, no tax money is involved and any payment thereunder would in no way benefit the plaintiff as a bondholder.

Plaintiff relied upon the case of **Maryland Casualty Company v. McDiarmid, 116 Oh St 675.** This was an action by an individual, who had received personal injuries at the hands of a policeman, on such policeman's official bond. The case merely held that even though such a bond was not required by state law, where such an official bond was given, it came within the provisions of §11242 GC (now §2307.06 R. C.) which authorizes suit by "a person injured thereby."

That case is entirely distinguishable from the instant case in that there is no showing that the plaintiff as a **bondholder** has been injured by any action of the members of the Turnpike Commission. As heretofore noted, there is no allegation that plaintiff has not been paid any existing obligation due on his bonds or that the monies pledged for the payment of such bonds has been in any way impaired by the action of the members of the Commission.

**Sec. 2307.06 R. C.,** having no application to this case, it would appear that only the State of Ohio as obligee of the bonds can sue to recover thereon as "the real party in interest," §2307.05 R. C. See 32 O. Jur. 1006; **Reed v. Timberman, 65 Oh Ap 182, State, ex rel. Johnson v. Washburn, 30 O. O. 435; Russell v. State Bridge Commission, 16 O. O. 399; Hunter v. Commissioners of Mercer County, 10 Oh St 515, Kelly v. State, 25 Oh St 567, State v. Kelly, 32 Oh St 421,** and **Tax Limitation League v. Day, 15 O. O. 122.**

We have previously indicated our belief that the petition does not allege facts which show that a "claim affecting the right to receive payment of any of the monies payable to any of the persons, firms or corporations named in such requisition which has not been released or will not be released simultaneously with such payment" had been filed with or served upon the Commission. Being of such opinion it would further appear that the petition does not state facts which show a breach of the condition of the bond, the bond being "conditioned upon the faithful performance of the duties of the office."

It is our opinion therefore that plaintiff lacks capacity to sue the individual members of the Commission and their sureties for forfeiture of their official bonds and it is our further opinion that in any event no cause of action is stated against the individual members of the Commission or their sureties in such third cause of action.

## IV

In view of the conclusions already reached in this decision, it is unnecessary for us to pass upon the remaining questions presented. For the reasons heretofore stated, however, we do conclude that, independently of the question of the capacity of the plaintiff to sue, no cause of action is stated against defendant Ohio National Bank. We believe that the reasons for this conclusion have been adequately stated heretofore.

It is not necessary therefore to pass upon the question of whether plaintiff does or does not stand in the same legal relationship as if suit had been brought by Turnpike Commission against Land Title for the recovery of the approximately $250,000.00, the question of whether payment made under mistake of law can be recovered in the absence of fraud, duress, compulsion or mistake of fact (See **State, ex rel. Dickman v. Defenbacher, 151 Oh St 391, State, ex rel. Hunt v. Fronizer, 77 Oh St 7**), the question of whether Turnpike Commission is or is not in "pari delicto" with Land Title insofar as the contract of June 4, 1952, is concerned, the question of misjoinder of parties defendant and the question of misjoinder of causes of action.

We are of the opinion, however, that plaintiff either as a taxpayer or as a bondholder, has not been injured by the contract held to be illegal in the case of **Steer and Adair v. Land Title Guarantee and Trust Company and Ohio Turnpike Commission, 65 Abs 33.** The persons actually injured by such illegal contract were attorneys at law and the general public. If, as held by Judge Harter, in Steer and Adair v. Land Title Guarantee and Trust Company and Ohio Turnpike Commission, supra, an order of repayment is in the nature of relief which could be characterized as "drastic and harsh," upon application of attorneys at law who had an interest therein, it would appear to be even more drastic and harsh to be granted upon the request of persons whose only actual interest would be in the nature of obtaining a "wind-fall."

The several demurrers filed by the several defendants to the amended petition are hereby sustained. It appearing to the Court from the very nature of the issues here involved that it would be impossible to file an amended petition on behalf of this plaintiff in the capacities in which he sues which would state a cause of action, the petition may be dismissed at the costs of the plaintiff. Entry may be prepared accordingly.